# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3831

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | |
| v. | * | |
| | * | |
| Tyrone Sturdivant, | * | |
| | * | |
| Appellant. | * | |

_____

No. 06-4063

_____

Appeals from the United States
District Court for the
Northern District of Iowa.

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellant, | * | |
| | * | |
| v. | * | |
| | * | |
| Tyrone Sturdivant, | * | |
| | * | |
| Appellee. | * | |

_____

Submitted: October 16, 2007
Filed: January 17, 2008

_____

Before LOKEN, Chief Judge, GRUENDER, and BENTON, Circuit Judges.

_____

BENTON, Circuit Judge.

A jury convicted Tyrone Sturdivant of conspiracy to manufacture and distribute 50 grams or more of cocaine base and to distribute cocaine salt, and two counts of distribution of powder cocaine. Sturdivant appeals the denial of his motions for acquittal and new trial. The government cross-appeals the denial of a sentencing enhancement. Having jurisdiction under 28 U.S.C. § 1291, this court affirms in part, reverses in part, and remands.

I.

In 2004, Brian Davis, Jr., a confidential informant, began working with the North Central Iowa Narcotics Task Force buying crack cocaine and powder cocaine from dealers in Mason City. Confidential informants Brian Davis, Sr. and Matthew Torres also participated in these controlled buys. All three informants were paid for their work with the task force.

On October 28, an officer observed Sturdivant outside the residence of co-defendants Jason Morrisette and Mario Covington during a controlled buy by Davis, Sr. The same officer also saw a red mini-van there, which was registered to Sturdivant's girlfriend.

Two months later, Torres made a controlled buy from co-defendant Colleen Armatis. During the buy, Torres observed a black man outside the residence in a red mini-van. Armatis then left, walking to a Kum & Go convenience store. Armatis got into a red mini-van, driven by Sturdivant's girlfriend, and was then dropped off at her house.

That same day, officers searched Sturdivant's house. Officers found $380 in Sturdivant's pocket, which matched the money from the controlled buy earlier that day between Torres and Armatis. No drugs or drug paraphernalia were found at Sturdivant's house.

On January 20, 2005, Sturdivant and three co-defendants, Morrisette, Covington, and Armatis, were charged for drug-related offenses. At trial, several cooperating witnesses testified to seeing and participating in Sturdivant's drug-related offenses.

Heather Servantez testified she met Sturdivant through her boyfriend in August 2003. She saw Sturdivant and her boyfriend weighing and bagging powder cocaine. She also testified that she, her boyfriend, and Sturdivant went to Chicago to buy cocaine. After the three returned to Mason City, she saw her boyfriend take a Ziploc bag from the trunk. Servantez stated he took it to a friend's house to weigh and bag four ounces of powder cocaine. When Servantez took Sturdivant home, Sturdivant also took a Ziploc bag from the trunk. Servantez estimated the bag had more than four ounces of powder cocaine. Sturdivant later came back to the car and handed her an eight-ball of powder cocaine.

Travis Ulrich testified he met Sturdivant in 2000 or 2001. Sturdivant was selling Ulrich an ounce of powder/crack cocaine per week for nine months. In March 2004, Ulrich again started dealing with Sturdivant, in the same quantities as before. Ulrich was also selling to his nephew. At some point, Ulrich was incarcerated in a halfway house, but his nephew was still meeting Sturdivant at Ulrich's house. According to Ulrich, his nephew bought at least half ounces of cocaine from Sturdivant several times. Ulrich was receiving a half gram of cocaine every day as payment for the arrangement. When Ulrich left the halfway house in August, he continued buying from Sturdivant until he was arrested in November 2004.

Nicole Hamilton testified she observed a drug transaction between Sturdivant and co-defendant Armatis.

Davis, Sr. testified he knew Sturdivant through co-defendant Covington. He stated he bought eight-balls of powder cocaine from Sturdivant (Covington's supplier), and saw Sturdivant bring cocaine to Covington's and Armatis's house. He also testified Sturdivant was present at the controlled buy on October 28, 2004. Sturdivant supplied the cocaine to Covington, although the transaction was between Covington and Davis, Sr. The following day in another controlled buy, Davis, Sr. paid Covington $100 for the debt he owed Sturdivant and $600 for the cocaine that Sturdivant brought with him.

At trial, officers testified to their traffic stop of Sturdivant in Bremer County on December 5, 2001. They seized 187 grams of cocaine from the vehicle. One officer testified Sturdivant acknowledged that his traveling from Dallas to Chicago to Mason City, over 2-3 days with no luggage but with cocaine under the seat, looked like drug trafficking.

A jury convicted Sturdivant and his co-defendants on all counts. At Sturdivant's sentencing, the court refused to apply a sentencing enhancement and refused to impose a mandatory life sentence. The court found that, with a total offense level of 37 and a criminal history category of VI, the sentencing range was 360 months to life. After a 12-month variance for health issues, Sturdivant was sentenced to 348 months imprisonment.

II.

This court reviews de novo the district court's denial of a motion for judgment of acquittal. *United States v. Judon*, 472 F.3d 575, 582 (8th Cir. 2007), *citing United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). Viewing the evidence most favorably to the government, resolving evidentiary conflicts in the government's

-4-

favor, and accepting all reasonable inferences from the evidence supporting the jury's verdict, this court affirms if the evidence at trial is sufficient to sustain a conviction. ***United States v. Johnson***, 474 F.3d 1044, 1048 (8th Cir. 2007); **Fed. R. Crim. P. 29(a)**. This court is "obliged to defer to the jury's determination of the credibility of the witnesses," and "will not second-guess the jury's credibility determination of the Government's witnesses." ***United States v. Shepard***, 462 F.3d 847, 867 (8th Cir.), *cert. denied*, 127 S. Ct. 838 (2006), *citing **United States v. Lopez***, 443 F.3d 1026, 1031 (8th Cir.) (en banc), *cert. denied*, 127 S. Ct. 214 (2006) *and **United States v. Vinton***, 429 F.3d 811, 817 (8th Cir. 2005).

Sturdivant alleges the government's use of convicted informants who were unsupervised and who controlled the investigation while carrying on criminal conduct corrupted the integrity of the government's evidence to the extent that he was entitled to a judgment of acquittal. Sturdivant bases his argument on: 1) the task force did not maintain written notes of their initial meetings with Davis, Jr. and Davis, Sr.; 2) Davis, Jr. and Davis, Sr. were working with little or no supervision; 3) the task force did only a cursory search of the informants before and after the controlled buys; 4) Davis, Sr. testified he purchased drugs for himself while working for the task force; 5) Davis, Jr. took two unsupervised trips to Minnesota; and 6) the task force never tested the confidential informants for drugs.

Sturdivant's arguments are unavailing. He does not point to any prejudice from the absence of written notes. He simply asserts that Davis, Jr. gave the officers a list of people he could get, and it is unknown whether Sturdivant was on that original list. Officers maintained daily in-person and phone contact with Davis, Jr. and Davis, Sr. during the work week, and phone contact during the weekend. Officers did search the informants before and after the buys, provide the informants with serialized money and a recording device, and maintain constant visual on the informants. Immediately after the controlled buys, the informant would hand an officer the drugs and briefly summarize the buys.

Although Davis, Sr. did admit to purchasing drugs for his personal use while working for the task force, officers did not learn of this until after the investigations were complete. Sturdivant inquired about this at length in cross-examination. Similarly, though Davis, Jr. took one trip to Minnesota without first informing the task force, the information he obtained and provided to the task force was used in the investigation. The second unsupervised trip to Minnesota was approved by the task force. Davis, Jr. was instructed to only ride in the car and not participate in the drug transaction. Additionally, one officer testified he had never tested a confidential informant for drugs during an investigation (and had not been trained on it either).

Additionally, Sturdivant claims the government's numerous violations of discovery orders, coupled with the lack of credibility of the government's case, required a judgment of acquittal. Specifically, Sturdivant points to the testimony of Heather Servantez and Davis, Jr.

Sturdivant argues the court erred in not striking Servantez's testimony. A week before trial, Servantez informed the government she took a trip to Chicago with her boyfriend and Sturdivant. Servantez testified about this trip at trial. Sturdivant alleges he did not receive timely notice of the changes in her testimony or investigative records before or after her testimony on direct examination.

This court will reverse the district court's refusal to strike the testimony of Servantez only if the court abused its discretion. *See **United States v. Sandoval-Rodriguez***, 452 F.3d 984, 989 (8th Cir.), *cert. denied*, 127 S. Ct. 600 (2006). This court considers: "(1) whether the Government acted in bad faith and the reason(s) for delay . . . ; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance." ***Id.***, *quoting* ***United States v. Pherigo***, 327 F.3d 690, 694 (8th Cir. 2003).

Sturdivant cannot demonstrate prejudice. After his attorney objected, the court postponed further cross-examination until defense counsel received the proffer

agreement and the report describing Servantez's change in testimony. When Sturdivant's attorney continued with the cross-examination after receiving the documents, she asked Servantez about her sudden change in testimony, the inconsistencies between her three debriefings with police, and how the investigative record of her description of the Chicago trip failed to mention that Sturdivant gave an eight-ball of powder cocaine to Servantez and that there were two Ziploc bags of cocaine. Because Sturdivant cannot establish prejudice in receiving the documents late and did not demonstrate the government acted in bad faith, the district court did not abuse its discretion in refusing to strike her testimony. *See Sandoval-Rodriguez*, 452 F.3d at 990.

With regard to Davis, Jr., Sturdivant argues the Court should have permitted him to inform the jury that Davis, Jr. was an accused sex offender. This court reviews the district court's decision to limit cross-examination for a clear and prejudicial abuse of discretion. *Judon*, 472 F.3d at 583, *citing United States v. Haskell*, 468 F.3d 1064, 1072 (8th Cir. 2006), *cert. denied*, 127 S. Ct. 2446 (2007). In *Judon*, this court upheld an identical limitation of this same witness in nearly identical circumstances, stating "it was not a clear and prejudicial abuse of discretion for the district court to exclude evidence regarding the sexual nature of the Government's primary witness's conviction." *Judon*, 472 F.3d at 583, *citing United States v. Ford*, 17 F.3d 1100, 1103-04 (8th Cir. 1994).[1]

Sturdivant contends the court erred in admitting the testimony of Travis Ulrich. Ulrich testified his nephew and Sturdivant were using his house for cocaine deals while Ulrich was in custody. Sturdivant argues that Ulrich's nephew was a non-testifying, uncorroborated accuser who could not be cross-examined, violating his confrontation rights. *See* **U.S. Const. amend. VI** ("In all criminal prosecutions, the

---

[1]On January 7, 2007, the Supreme Court granted certiorari, vacated the judgment, and remanded *United States v. Judon*, 472 F.3d 575 (8th Cir. 2007), on grounds not relevant to this opinion.

accused shall enjoy the right . . . to be confronted with the witnesses against him"); *Crawford v. Washington*, 541 U.S. 36, 59, 68 (2004) (testimonial statements of witnesses absent from trial are only admissible where the declarant is unavailable and the defendant has had a prior opportunity to cross-examine).

A statement is not hearsay if it is "a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." **Fed. R. Evid. 801(d)(2)(e)**. The government must prove by a preponderance of the evidence that: 1) the conspiracy existed; 2) the defendant and the declarant were members of the conspiracy; and 3) the statement was in furtherance of the conspiracy. *United States v. Madrigal*, 152 F.3d 777, 781 (8th Cir. 1998).

Here, the government made this showing, and the statement was properly admitted as a non-hearsay statement of a co-conspirator under 801(d)(2)(e). *Crawford* is inapplicable and the testimony did not violate Sturdivant's confrontation rights. *See Crawford*, 541 U.S. at 56, 59, 68 (holding only to testimonial statements and stating that statements made in furtherance of a conspiracy are not testimonial).

Viewing the evidence most favorably to the government and accepting all reasonable inferences to support the jury's verdict, the evidence was sufficient to sustain a conviction. *See United States v. Huber*, 404 F.3d 1047, 1053 (8th Cir. 2005) ("the only proper basis for such a motion [judgment of acquittal] is insufficient evidence of guilt"). The court did not err in denying Sturdivant's motion for judgment of acquittal.

III.

This court reviews for abuse of discretion the district court's denial of a motion for new trial. *United States v. Judon*, 472 F.3d 575, 582 (8th Cir. 2007), *citing United States v. Peters*, 462 F.3d 953, 957 (8th Cir. 2006). The court may "vacate any judgment and grant a new trial if the interest of justice so requires." **Fed. R.**

**Crim. P. 33(a)**.  In doing so, it may weigh the evidence and evaluate the credibility of the witnesses.  *United States v. Johnson*, 474 F.3d 1044, 1051 (8th Cir. 2007).  However, the "authority to grant a new trial should be exercised sparingly and with caution."  *Id.*  "The jury's verdict must be allowed to stand unless 'the evidence weighs heavily enough against the verdict [such] that a miscarriage of justice may have occurred.'" *Id.*, *quoting* *United States v. Lacey*, 219 F.3d 779, 783 (8th Cir. 2000).

Sturdivant insists the court should have granted a new trial because of the numerous violations of discovery rules, the Jencks Act, and the flagrant misuse of criminal witnesses.  Specifically, Sturdivant contends that suppression of the witnesses' testimony is required by the Jencks Act.  He alleges he did not receive Travis Ulrich's immunity agreement, the pre-trial record of Brian Davis, Sr.'s unsupervised activities, Officer David Hepperly's report of his initial meeting with Brian Davis, Jr., and a police interview report of Heather Servantez.

By the Jencks Act, after a government witness has testified, the court, upon motion of the defendant, shall order the government to produce any statement of the witness that relates to the subject matter of the testimony and is in the government's possession.  **18 U.S.C. § 3500(b)**.  "If the United States elects not to comply . . . , the court shall strike from the record the testimony of the witness . . . unless the court in its discretion shall determine that the interests of justice require that a mistrial be declared."  **§ 3500(d)**.  Bad faith by the government and prejudice to the defendant must be shown to overturn a conviction based on Jencks Act violations. *United States v. Vieth*, 397 F.3d 615, 619 (8th Cir. 2005).

Under *Brady v. Maryland*, 373 U.S. 83, 85 (1963), the government must disclose any evidence favorable to the accused and material either to guilt or punishment.  To prove a *Brady* violation, Sturdivant must show that the government suppressed the evidence, the evidence was favorable to him, and the evidence was material to the issue of guilt or punishment.  *See* *United States v. Shepard*, 462 F.3d

847, 870 (8th Cir. 2006). "This includes both impeachment and exculpatory evidence." *Id.* Evidence is material "if there is a reasonable probability that, had the evidence been disclosed to the defense, the result of the proceeding would have been different." *Id.*, *quoting United States v. Duke*, 50 F.3d 571, 577 (8th Cir. 1995).

Sturdivant fails to show bad faith, prejudice, or materiality. Sturdivant did receive the pre-trial record of Davis, Sr. and the police report of Servantez. His attorney was permitted further cross-examination after receiving the information. *See United States v. Sandoval-Rodriguez*, 452 F.3d 984, 990 (8th Cir. 2006) ("[t]he government's disclosure pattern in a given case does not offend Brady . . . so long as the evidence in question is disclosed prior to the end of trial"). Ulrich testified he signed a limited-use immunity agreement. The government could not produce Ulrich's actual immunity agreement, but gave Sturdivant's attorney the standard agreement. Ulrich testified he signed a similar agreement, and Sturdivant's attorney cross-examined him further after reviewing the standard agreement. Officer Hepperly testified about an initial meeting with Davis, Jr. He also stated he took some notes, which he handed over to the task force. According to Hepperly, the notes were later destroyed by the task force. "[T]he government cannot produce statements it does not possess." *United States v. Williams*, 604 F.2d 1102, 1116 (8th Cir. 1979). Moreover, Sturdivant does not point to any prejudice or materiality in not receiving Hepperly's notes. *See Vieth*, 397 F.3d at 619.

The court did not err in denying Sturdivant's motion for new trial.

IV.

This court reviews de novo the district court's interpretation and application of the Sentencing Guidelines. *United States v. Judon*, 472 F.3d 575, 583 (8th Cir. 2007), *citing United States v. Mashek*, 406 F.3d 1012, 1017 (8th Cir. 2005). The district court's decision on felony drug conviction enhancements is also reviewed de novo because it is a matter of statutory interpretation. *United States v. Funchess*, 422 F.3d 698, 703 (8th Cir. 2005).

"To obtain a sentencing enhancement based on a defendant's earlier conviction, the Government must comply with the notice requirements of 21 U.S.C. § 851(a)." ***United States v. Curiale***, 390 F.3d 1075, 1076 (8th Cir. 2004) (per curiam). The government, before trial or before entry of a guilty plea, must file an information with the court stating in writing the previous convictions to be relied on. **21 U.S.C. § 851(a)(1)**. "Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." ***Id.*** The statute does not define "clerical error." However, a clerical error is one where the government's initial information still gave the defendant "reasonable notice of the Government's intent to rely on a *particular* conviction." ***Curiale***, 390 F.3d at 1076 (emphasis added).

For example, correcting the offense of conviction from "sale" to "possession" of a controlled substance is a clerical error, so long as the "county of origin, date of conviction, and case number remained the same." ***Curiale***, 390 F.3d at 1077. Amending the information to change the state of conviction is a clerical error when the information correctly identified the crime, the type of drug, the quantity, and the year of conviction. ***United States v. Severino***, 316 F.3d 939, 944-45 (9th Cir. 2003) (en banc). And changing the year of conviction from 1992 to 1991 is a clerical error when the original information correctly listed the conviction, the state of conviction, and the month and day of conviction. ***Perez v. United States***, 249 F.3d 1261, 1266-67 (11th Cir. 2001).

Before trial, the government filed an information seeking a sentencing enhancement of mandatory life imprisonment based on three felony drug convictions:

> (1) Possession with intent to deliver marijuana & cocaine, in Bremer County, Iowa District Court on or about April 15, 2002, in Case No. FECR002737.

> (2) Delivery and manufacture of less than 50 grams of cocaine, in VanBuren County, Missouri on or about August 12, 1991, in Case No. 91-7638-W.

(3) Manufacture and delivery of 15+ grams of cocaine, in Lake County, IL, on or about February 23, 1998, in Case No. 97CF2821.

After trial but before sentencing, the government amended the information to change the state of conviction (2) to Michigan. At sentencing, the court refused to apply the VanBuren County conviction, finding an incorrect state is not an amendable clerical error. The court also refused to apply the Bremer County conviction. Because the court did not find at least two prior felony drug convictions, it declined to impose a mandatory life sentence.

Here, the court erred in not applying the VanBuren County conviction. Correcting the state from Missouri to Michigan is a clerical error that may be amended before sentencing because the original information – by indicating the correct crime, county of origin, date of conviction, and case number – gave reasonable notice of the government's intent to rely on that particular conviction. *See* ***Curiale***, 390 F.3d at 1077; *see also* ***United States v. Severino***, 316 F.3d at 944-45.

Because the Lake County conviction is undisputed and the court erred in not applying the VanBuren County conviction, this court need not address the Bremer County conviction. The case is remanded for resentencing.

V.

The judgment of the district court is affirmed in part, reversed in part, and the case is remanded.

_____