# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 07-1170

———————

United States of America,　　　　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Plaintiff – Appellant,　　　*
　　　　　　　　　　　　　　　　　　*　Appeal from the United States
　　　v.　　　　　　　　　　　　　　*　District Court for the Eastern
　　　　　　　　　　　　　　　　　　*　District of Missouri.
Viridiana Desantiago-Esquivel,　　　*
　　　　　　　　　　　　　　　　　　*
　　　　　Defendant – Appellee.　　　*

———————

Submitted: October 17, 2007
Filed: May 22, 2008

———————

Before RILEY, MELLOY, and COLLOTON, Circuit Judges.

———————

MELLOY, Circuit Judge.

Viridiana Desantiago-Esquivel, an illegal alien from Mexico, pled guilty to conspiring to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. § 841(a)(1). The district court found that she qualified for safety valve relief under U.S.S.G. § 5C1.2, which enabled the district court to impose a sentence less than the statutory mandatory minimum term of 10 years. The applicable Guidelines range was 108-135 months. The district court imposed a sentence of 36 months if Desantiago-Esquivel voluntarily stipulated to removal after serving her sentence. The district court imposed an alternative sentence of 99 months in the event Desantiago-Esquivel did not stipulate to removal. The government appeals the district court's

structuring of alternative sentences as not authorized by statute and challenges as unreasonable the downward variance in the 36-month sentence. We reverse and remand for re-sentencing.

## I. Background

### A. Factual Background

At the time of the offense, Desantiago-Esquivel was a twenty-three year old Mexican citizen illegally present in the United States. Immigration authorities had twice removed Desantiago-Esquivel from the United States. Each time she had been arrested for falsely claiming United States citizenship. She had no prior convictions.

Desantiago-Esquivel has three children from a previous relationship and an infant daughter with her common-law husband, Clemente Alonso-Lara. Her children are all United States citizens. Since having children, Desantiago-Esquivel has stayed at home raising her children while her previous boyfriend, and later Alonso-Lara, provided financial suppport. Desantiago-Esquivel's sister in Missouri is now caring for the children. Upon removal, Desantiago-Esquivel plans to take the children and live with another sister in Mexico.

Desantiago-Esquivel's other main source of income was drug sales. She and Alonso-Lara sold drugs together. She acted as an interpreter for him because she spoke English. Relevant to the present offense, Alonso-Lara purchased approximately four pounds of methamphetamine in Arkansas and brought the drugs to his and Desantiago-Esquivel's residence in Holcomb, Missouri. A few days later, Desantiago-Esquivel and a confidential informant agreed to exchange two ounces of methamphetamine for $2500. The next day, Desantiago-Esquivel sold the methamphetamine to an undercover agent who was accompanied by the informant. After the sale, the police arrested Desantiago-Esquivel and Alonso-Lara. The police

obtained a search warrant for their residence and seized 677.5 grams of methamphetamine, a loaded revolver and ammunition, pounds of cutting agents used with methamphetamine, documents and pads with financial calculations, and $1600 in cash. Desantiago-Esquivel admitted that the methamphetamine was to be distributed in southeast Missouri and that she had been distributing methamphetamine for months.

## B. Sentencing

At sentencing, Desantiago-Esquivel argued for a downward departure because her conviction represented aberrant behavior for her and resulted from her family's poverty. See U.S.S.G. § 5K2.20 (authorizing the district court to depart downward in some cases if the defendant's conduct "represents a marked deviation . . . from an otherwise law-abiding life"). She also argued for a reduced sentence in consideration for voluntarily stipulating to removal and waiving whatever due process rights she had. She noted that in recorded telephone conversations, she always served solely as an intermediary, taking drug transaction information to her husband. While she participated in drug trafficking, she argued she did so solely as an interpreter for her husband. Finally, she stated that she wanted to be with her young children. The latter arguments were essentially a request for a § 3553(a) variance.

The district court stated that although Desantiago-Esquivel did not meet the standard of aberrant behavior because of the continuing nature of the drug trafficking, she was "acting under someone else's authority to whom [she was] behold[en] for food, shelter, and whatever else." The district court emphasized that Desantiago-Esquivel was the mother of four young children and departed under 18 U.S.C. § 3553(a) from the applicable Guidelines range of 108-135 months. The district court imposed a 36 month sentence (the "lower sentence") if Desantiago-Esquivel

voluntarily stipulated to removal after serving her sentence. If she did not, the district court imposed a 99 month sentence (the "higher sentence").[1]

## II. Discussion

We review the district court's sentence for reasonableness. <u>Gall v. United States</u>, 128 S. Ct. 586, 594 (2007). The reasonableness of the sentence is reviewed under a "deferential abuse-of-discretion standard." <u>Id.</u> at 591. "In reviewing the reasonableness of a sentence outside the Guidelines range, appellate courts may therefore take the degree of variance into account and consider the extent of a deviation from the Guidelines." <u>Id.</u> at 594-95. The district court must "ensure that the justification is sufficiently compelling to support the degree of the variance" and "adequately explain the chosen sentence to allow for meaningful appellate review." <u>Id.</u> at 597.

Reasonableness review also requires us to "first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence—including an explanation for any deviation from the Guidelines range." <u>Id.</u> "[T]he Guidelines should be the starting point and the initial benchmark," but the district court should also consider the § 3553(a) factors in determining an appropriate sentence. <u>Id.</u> at 596. If the decision was "procedurally sound," we then review the "substantive reasonableness of the sentence" under the abuse-of-discretion standard considering the totality of the circumstances. <u>Id.</u> at 597.

---

[1]The district court said it was "departing" under § 3553(a). Given the disposition of this case, we do not need to decide if the sentence represented a departure or variance.

We do not read the Gall list of procedural impediments to be all inclusive. The procedure utilized in this case, imposing alternative sentences, also constitutes a significant error and requires reversal. Section 3551(b) states the types of authorized sentences and does not authorize alternative sentences. 18 U.S.C. § 3551(b). The district court is only authorized to impose "*a* term of imprisonment." 18 U.S.C. § 3551(b)(3) (emphasis added). District courts imposed alternative sentences only after Blakely[2] in the event that the Guidelines were found unconstitutional. See United States v. White, 439 F.3d 433, 434-35 (8th Cir. 2006) (discussing the district court's imposition of alternate sentences). Further, the type of alternative sentences used in this case involves a change of fact—if Desantiago-Esquivel voluntarily stipulates to removal—that is wholly in Desantiago-Esquivel's control, that occurs after sentencing, and that has significant legal consequence without any judicial oversight. This is distinct from the post-Blakely alternative sentences that were wholly dependent on changes in the law.

Since a significant procedural error occurred, we will not speculate as to what sentence the district court might have imposed if it imposed a single sentence on Desantiago-Esquivel. We leave it to the district court to impose what it considers to be a reasonable sentence in the first instance. To the extent either party believes the sentence to be unreasonable, we will consider the appeal issues at that time, taking into consideration the district court's reasons for imposition of the sentence it imposes and the arguments of the parties.

III. Conclusion

For these reasons, we reverse and remand for re-sentencing.

_____

[2]Blakely v. Washington, 542 U.S. 296 (2004).