# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

Nos. 07-2310/2541

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee/Cross-Appellant, | * | |
| | * | |
| v. | * | Appeal from the United States |
| | * | District Court for the |
| Julio Garcia-Hernandez, | * | Northern District of Iowa. |
| | * | |
| Appellant/Cross-Appellee. | * | |
| | * | |
| | * | |

_____

Submitted: March 12, 2008
Filed: July 7, 2008

_____

Before RILEY, GRUENDER and SHEPHERD, Circuit Judges.

_____

GRUENDER, Circuit Judge.

After a jury trial, Julio Garcia-Hernandez was convicted of conspiring to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 841(a)(1), (b)(1)(A) and 846, and possessing a firearm in furtherance of a drug trafficking crime, in violation of 18 U.S.C. § 924(c). The district court denied Garcia-Hernandez's motion for judgment of acquittal or, in the alternative, for a new trial and sentenced him to 240 months' imprisonment. Garcia-Hernandez appeals the district

court's denial of his post-trial motion. The Government appeals the district court's refusal to impose at least a three-level aggravating role enhancement to its advisory United States Sentencing Guidelines determination and its decision to vary downward from the advisory guidelines range. For the reasons discussed below, we affirm Garcia-Hernandez's convictions but vacate his sentence and remand for resentencing.

## I.    BACKGROUND

In May 2006, Donald Steburg, Jr., provided information to members of the Webster County Sheriff's Department about his previous distribution and use of methamphetamine. Steburg said he purchased methamphetamine from Garcia-Hernandez. Steburg and Garcia-Hernandez communicated with each other by phone, and Steburg met with Garcia-Hernandez or his associates to get methamphetamine at different locations, including Garcia-Hernandez's trailer home and the Jo-Mart Motel. While Steburg normally would pay cash for the methamphetamine, Garcia-Hernandez sometimes fronted the methamphetamine to Steburg. At the time Steburg contacted the officers, Garcia-Hernandez had left two voice messages for Steburg about the $5,000 to $6,000 that Steburg owed him for past drug transactions.

Based on this information, law enforcement planned a controlled buy of methamphetamine by Steburg from Garcia-Hernandez. Steburg called Garcia-Hernandez to arrange the buy. Steburg asked Garcia-Hernandez if he had any "work" or "motorcycles," words they used to refer to drugs, and they set up a meeting for the next day. Iowa Division of Narcotics Enforcement Special Agent John Howard and Steburg drove to Garcia-Hernandez's trailer home for that meeting. Steburg was outfitted with a wire transmitter. Once Garcia-Hernandez and Steburg were in the trailer, Garcia-Hernandez told Steburg that he needed to pay his debts. Steburg responded that he needed some time to get the money. Garcia-Hernandez directed Steburg to meet him at the Jo-Mart Motel later that day with the money.

Special Agent Howard and Steburg later drove to the Jo-Mart Motel, and Steburg entered a motel room with Jose Alejandro DeLuna-Ponce, Garcia-Hernandez's cousin. Garcia-Hernandez was waiting in the room with Miguel Angel Rolon-Ramos. Steburg saw a gun next to Garcia-Hernandez and turned to leave the room. Garcia-Hernandez picked up the gun and instructed DeLuna-Ponce and Rolon-Ramos to lock the door and block Steburg from leaving. Garcia-Hernandez demanded money from Steburg, and Steburg said he would leave his cell phone with Garcia-Hernandez as an assurance that he would go to his vehicle to get the money and return to the motel room. After Garcia-Hernandez told Steburg he had "work" for him, he took Steburg's cell phone and let Steburg leave to get the money. Steburg returned to the vehicle and told Special Agent Howard that Garcia-Hernandez had a gun. They left the parking lot.

During the meeting at the Jo-Mart Motel, other members of law enforcement were conducting surveillance of the area. Special Agent Mark Minten of the Drug Enforcement Administration monitored the conversations through the wire transmitter that Steburg was wearing and observed from the tone of Steburg's voice that something had gone wrong when Steburg entered the room. After Steburg left the motel room, Special Agent Minten received a call on his cell phone from Steburg's cell phone. During that call, Garcia-Hernandez made arrangements to sell methamphetamine to Special Agent Minten. Sioux City Police Officer Mike Simons also conducted surveillance from outside of the Jo-Mart Motel. After Steburg left the motel room, Officer Simons observed Rolon-Ramos leave the motel room with his right elbow tucked into his right side as he glanced around the area and went around a corner of the motel. Rolon-Ramos then returned to the motel room. As Garcia-Hernandez, DeLuna-Ponce and Rolon-Ramos each left the motel room, they were arrested. The officers searched the motel room and seized a small amount of methamphetamine but did not find the firearm. They also did not find the firearm after a search of the area surrounding the motel.

At the jury trial, the Government presented evidence that Garcia-Hernandez conspired with various individuals to distribute 500 grams or more of methamphetamine (Count 1) and possessed a firearm in furtherance of a drug trafficking crime (Count 2). Steburg testified about his involvement with Garcia-Hernandez's methamphetamine trafficking operation and the events surrounding Garcia-Hernandez's arrest. Jason Boldon testified that he obtained more than fifteen pounds of methamphetamine from Garcia-Hernandez and his associates. Like Steburg, he testified that he usually paid cash for the methamphetamine, but Garcia-Hernandez sometimes fronted him the drugs. Both Steburg and Boldon testified that they would sell some of the methamphetamine they obtained from Garcia-Hernandez to other people. The jury returned a guilty verdict against Garcia-Hernandez on both counts.

At sentencing, the district court determined that Garcia-Hernandez's base offense level was 36 based on the quantity of methamphetamine involved in the conspiracy. The Government sought at least a three-level upward adjustment for an aggravating role pursuant to U.S.S.G. § 3B1.1, which Garcia-Hernandez opposed. The district court declined to impose a three- or four-level upward adjustment because it found that the conspiracy did not involve five or more participants and was not otherwise extensive. *See* U.S.S.G. § 3B1.1(a), (b). The district court instead imposed a two-level aggravating role adjustment because it found that Garcia-Hernandez managed or supervised at least one other participant in the crime, DeLuna-Ponce. *See* U.S.S.G. § 3B1.1(c). Garcia-Hernandez's advisory sentencing guidelines range for the conspiracy conviction, based on a total offense level of 38 and a criminal history category of I, was 235 to 293 months' imprisonment. Garcia-Hernandez requested a variance based, in part, on his inability to participate in an early release program due to his illegal alien status. The district court granted a downward variance and sentenced Garcia-Hernandez to 180 months' imprisonment on the conspiracy conviction and a mandatory, consecutive sentence of 60 months' imprisonment on the firearm conviction, for a total sentence of 240 months' imprisonment. Garcia-Hernandez appeals his convictions, and the Government appeals his sentence.

## II.  DISCUSSION

### A.  Post-Trial Motion

Garcia-Hernandez argues that there was insufficient evidence to support the verdicts and that the district court erred by denying his motion for judgment of acquittal or, in the alternative, for a new trial.  We affirm Garcia-Hernandez's convictions.

### 1.  Judgment of Acquittal

"We review de novo a district court's denial of a motion for judgment of acquittal." *United States v. McAtee*, 481 F.3d 1099, 1104 (8th Cir. 2007).  "We view the evidence in the light most favorable to the jury's verdict and we draw all reasonable inferences in the government's favor . . . ." *Id.*  "[W]e will uphold the verdict if there is any interpretation of the evidence that could lead a reasonable-minded jury to find the defendant guilty beyond a reasonable doubt." *United States v. Cole*, 525 F.3d 656, 661 (8th Cir. 2008) (quotation omitted).  "Both direct and circumstantial evidence can be the basis of a conviction." *United States v. Beckman*, 222 F.3d 512, 522 (8th Cir. 2000).  Furthermore, we must not "weigh the evidence or assess the credibility of witnesses." *United States v. Santana*, 524 F.3d 851, 853 (8th Cir. 2008).

### a.  Drug Distribution Conspiracy

After reviewing the evidence presented to the jury, we find that the district court did not err by denying Garcia-Hernandez's motion for judgment of acquittal with respect to his conspiracy conviction.  "To establish that a defendant conspired to distribute drugs under 21 U.S.C. § 846, the government must prove: (1) that there was a conspiracy, i.e., an agreement to distribute the drugs; (2) that the defendant knew of the conspiracy; and (3) that the defendant intentionally joined the conspiracy." *United States v. Rolon-Ramos*, 502 F.3d 750, 754 (8th Cir. 2007) (quotation omitted).  "An

agreement to join a conspiracy need not be explicit but may be inferred from the facts and circumstances of the case." *United States v. Rodriguez-Mendez*, 336 F.3d 692, 695 (8th Cir. 2003) (internal quotation omitted). Furthermore, "evidence of multiple sales of resale quantities of drugs is sufficient in and of itself to make a submissible case of a conspiracy to distribute." *United States v. Eneff*, 79 F.3d 104, 105 (8th Cir. 1996). Additionally, the length of time participants know each other and their "established methods of payment" may support the existence of a conspiracy. *United States v. Washington*, 318 F.3d 845, 852 (8th Cir. 2003).

Steburg testified that he purchased at least ten pounds of methamphetamine for further distribution from Garcia-Hernandez and his associates over several months. While DeLuna-Ponce sometimes delivered the methamphetamine to Steburg, Steburg testified that he always made the arrangements for those meetings with Garcia-Hernandez. Steburg also testified that he met Garcia-Hernandez at various locations to conduct the drug transactions and, while he usually paid cash for the methamphetamine, Garcia-Hernandez sometimes fronted the methamphetamine to Steburg. When he fronted the methamphetamine to Steburg, Steburg would then sell the drugs to other individuals and repay Garcia-Hernandez with that money.

Steburg also testified about the events on the day of Garcia-Hernandez's arrest. Garcia-Hernandez told Steburg at Garcia-Hernandez's trailer that Steburg needed to pay his debt. Garcia-Hernandez then met Steburg at the Jo-Mart Motel where Garcia-Hernandez threatened Steburg with a gun, demanded payment, and instructed DeLuna-Ponce and Rolon-Ramos to prevent Steburg from leaving the room. Garcia-Hernandez also discussed more "work" he had for Steburg before keeping Steburg's cell phone and letting him leave the room to get the money.

Garcia-Hernandez argues that "[a]bsent Steburg's questionable testimony, there is not an indictable conspiracy." Appellant's Br. at 10. He contends that Steburg testified falsely to avoid going to prison for his drug dealings. However, in reviewing the denial of a judgment of acquittal, it is not our role to assess Steburg's credibility. *See Santana*, 524 F.3d at 853. Steburg provided testimony about his involvement in

an extensive methamphetamine distribution conspiracy with Garcia-Hernandez and others. The jury assessed Steburg's credibility and quite reasonably determined that a methamphetamine distribution conspiracy existed and that Garcia-Hernandez knowingly participated in it. Therefore, we conclude that the evidence was sufficient for a reasonable jury to find that Garcia-Hernandez was guilty of conspiring to distribute methamphetamine.

### b.     Possession of a Firearm

The district court also did not err in denying Garcia-Hernandez's motion for judgment of acquittal with respect to his firearm conviction. To establish that a defendant possessed a firearm in violation of § 924(c), the Government must prove that "(1) he committed a drug trafficking crime, and (2) he possessed a firearm in furtherance of that crime." *Rolon-Ramos*, 502 F.3d at 757. We have already held that sufficient evidence supported Garcia-Hernandez's methamphetamine distribution conspiracy conviction. We now turn to the second element, whether sufficient evidence supports the jury's conclusion that Garcia-Hernandez possessed a firearm in furtherance of that conspiracy.

Garcia-Hernandez argues that there was insufficient evidence that he possessed a firearm because the officers did not recover any firearm at the Jo-Mart Motel. However, "proof that a defendant possessed a firearm may be established solely by eyewitness testimony where the gun is not recovered or introduced at trial." *United States v. Anderson*, 78 F.3d 420, 423 (8th Cir. 1996). Garcia-Hernandez also argues that Steburg's testimony is contradicted by the fact that he did not mention the presence of the firearm while he was in the motel room. We disagree with Garcia-Hernandez's contention that Steburg's failure to verbally reference the presence of the gun in the motel room contradicts his testimony that Garcia-Hernandez had a gun. Steburg immediately told Special Agent Howard of the gun when he left the motel room. Furthermore, Special Agent Minten, who was listening to the conversation through the wire transmitter, heard Steburg's voice when he entered the motel room and noticed that something was wrong with the situation. This would be consistent

-7-

with Steburg's testimony that he saw a gun in the motel room and that Garcia-Hernandez pointed the gun at him. Additionally, Officer Simons observed Rolon-Ramos leave the motel room with his elbow tucked into his side as if he was hiding something, which could explain why the gun was not found.

Garcia-Hernandez then argues that Steburg's testimony is not sufficient to establish his possession of a firearm because it does not establish the item Steburg saw was a firearm, and not a toy gun. Steburg's testimony, though, is sufficient to establish that Garcia-Hernandez possessed a firearm. *See Anderson*, 78 F.3d at 423; *see also United States v. Jones*, 16 F.3d 487, 491 (2d Cir. 1994) (stating that "[t]he mere possibility that the object seen by witnesses may have been a sophisticated toy or other facsimile does not necessarily create a reasonable doubt, nor is the government required to disprove that theoretical possibility").

Garcia-Hernandez next argues that any gun he possessed at the Jo-Mart Motel was not possessed in furtherance of a drug trafficking crime. "The term 'furtherance' as used in § 924(c) should be given its plain meaning, 'the act of furthering, advancing, or helping forward.'" *Id.* at 758 (quotation and alteration omitted). A person's possession of a firearm furthers a drug distribution conspiracy crime when he uses it to frighten another person into paying a debt owed for a previous drug transaction. *Id.*; *see also United States v. Hamilton*, 332 F.3d 1144, 1149 (8th Cir. 2003) (holding that a gun furthered a drug trafficking crime when the defendant used it to frighten people into returning drugs he believed were stolen from him and to discourage them from stealing drugs in the future). Garcia-Hernandez contends that the evidence proves, at most, that he sought the payment of a debt from Steburg, not necessarily a drug debt. He bases this argument, in part, on the fact that the Government was not able to complete a controlled buy between Garcia-Hernandez and Steburg. However, in light of Steburg's testimony and the context in which Garcia-Hernandez brandished the gun, we believe a jury could reasonably conclude that Garcia-Hernandez pointed the gun at Steburg in order to further his efforts to collect money that Steburg owed him for methamphetamine that Garcia-Hernandez had fronted to Steburg in a prior transaction. Garcia-Hernandez's actions in the motel

room were part of the drug trafficking crime, and the firearm that Garcia-Hernandez possessed in the motel room furthered this crime because its use was intended to ensure that Steburg would pay Garcia-Hernandez for previous drug transactions. *See Rolon-Ramos*, 502 F.3d at 758. Therefore, we conclude that the evidence is sufficient to establish that Garcia-Hernandez possessed a firearm in the motel room in furtherance of the methamphetamine distribution conspiracy.

### 2. New Trial

We review a district court's denial of a motion for a new trial for an abuse of discretion. *United States v. Sturdivant*, 513 F.3d 795, 802 (8th Cir. 2008). We "may 'vacate any judgment and grant a new trial if the interest of justice so requires.'" *Id.* (quoting Fed. R. Crim. P. 33(a)). We also

> may weigh the evidence and evaluate the credibility of the witnesses. However, the authority to grant a new trial should be exercised sparingly and with caution. The jury's verdict must be allowed to stand unless the evidence weighs heavily enough against the verdict such that a miscarriage of justice may have occurred.

*Id.* (internal quotations and citations omitted) (alteration omitted). Applying this standard of review, including weighing the evidence and evaluating the credibility of the witnesses, we find that the jury's verdicts do not result in a miscarriage of justice. Steburg's testimony regarding his purchase of multiple pounds of methamphetamine from Garcia-Hernandez and his payment method was corroborated by Boldon's testimony that he similarly purchased multiple pounds of methamphetamine from Garcia-Hernandez and was sometimes fronted the drugs. Furthermore, Garcia-Hernandez used Steburg's cell phone at the Jo-Mart Motel to call Special Agent Minten and arrange another drug sale just before his arrest. Although the evidence with respect to the firearm count is not as compelling, we cannot conclude that the evidence weighs so heavily against the verdict as to create a miscarriage of justice. Therefore, the district court did not abuse its discretion in denying Garcia-Hernandez's motion for a new trial.

## B.    Sentencing

The Government argues that the district court erred in sentencing Garcia-Hernandez because it did not impose a three- or four-level upward adjustment based on a finding that the conspiracy had at least five participants and because it varied downward based on an inappropriate factor.  In reviewing his sentence, we

> must first ensure that the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range, treating the Guidelines as mandatory, failing to consider the § 3553(a) factors, selecting a sentence based on clearly erroneous facts, or failing to adequately explain the chosen sentence– including an explanation for any deviation from the Guidelines range.

*Gall v. United States*, 552 U.S. ---, 128 S. Ct. 586, 597 (2007).  If the district court did not commit a procedural error, we then determine whether the sentence is substantively reasonable under an abuse-of-discretion standard.  *Id.*  We find that the district court committed procedural errors in its imposition of an aggravating role enhancement and its reliance on an improper factor in granting a downward variance.

### 1.    Aggravating Role Enhancement

"We review for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based on the defendant's role in the offense." *United States v. McDonald*, 521 F.3d 975, 978 (8th Cir. 2008) (quotation omitted). Under U.S.S.G. § 3B1.1(a), a district court should increase a defendant's offense level by four levels if he "was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive."  If a defendant was a "manager or supervisor" of a criminal activity involving five or more participants or that was otherwise extensive, then a district court should increase the defendant's offense level by three levels.  U.S.S.G. § 3B1.1(b).  If a defendant was a manager or supervisor of a criminal activity that did not involve five or more participants and was not otherwise extensive, then a district court should increase the defendant's offense level by two

levels. U.S.S.G. § 3B1.1(c). For U.S.S.G. § 3B1.1 purposes, "[a] 'participant' is a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.1 cmt. n.1. "Participants . . . include intermediaries who sell drugs on behalf of the defendant." *United States v. Matlock*, 109 F.3d 1313, 1317 (8th Cir. 1997).

The district court determined that Garcia-Hernandez was a manager or supervisor of the conspiracy but that the conspiracy only involved three participants: Garcia-Hernandez, DeLuna-Ponce and Rolon-Ramos. The district court held that Steburg and Boldon were merely customers of Garcia-Hernandez and not participants in the conspiracy. Therefore, the district court only increased Garcia-Hernandez's total offense level by two levels. *See* U.S.S.G. § 3B1.1(c). The Government argues that the district court should have added at least three offense levels because five or more participants were involved in the conspiracy. Garcia-Hernandez argues that the district court correctly determined that Steburg and Boldon were only customers of Garcia-Hernandez.

The Government has the burden of proving by a preponderance of the evidence that the aggravating role enhancement is warranted. *See United States v. Mesner*, 377 F.3d 849, 851-52 (8th Cir. 2004). We find that the district court clearly erred in finding that the Government failed to satisfy its burden of proving by a preponderance of the evidence that there were five participants in the conspiracy, and, therefore, the district court erred by not adding at least three levels pursuant to U.S.S.G. § 3B1.1(a), (b). Steburg and Boldon both testified that they received large amounts of methamphetamine from Garcia-Hernandez and his associates during numerous meetings at various locations. They also both testified that they sold some of this methamphetamine to other individuals. When they purchased the methamphetamine from Garcia-Hernandez and his associates, they mostly paid cash for the methamphetamine, but Garcia-Hernandez sometimes fronted the methamphetamine. When he fronted the methamphetamine, they were required to repay him after selling the methamphetamine to others. Therefore, Steburg and Boldon, though not convicted, were criminally responsible for the commission of the methamphetamine

distribution conspiracy offense and, therefore, were participants in the offense, along with Garcia-Hernandez, DeLuna-Ponce and Rolon-Ramos. *See Matlock*, 109 F.3d at 1317. The district court clearly erred in holding otherwise.[1]

## 2. Downward Variance

The Government also argues that the district court granted Garcia-Hernandez a downward variance based on an improper factor. While the district court stated that its "main reason for this variance is going to be . . . the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct," Sentencing Tr. at 133, the district court also based its decision to vary on the fact that prisoners who are United States citizens are eligible for early release programs but prisoners who are illegal aliens are ineligible for this early release. However, Garcia-Hernandez's conviction for possessing a firearm, in violation of § 924(c), makes him ineligible for early release, regardless of whether he is a United States citizen or an illegal alien. *See* 28 C.F.R. § 550.58(a)(1)(vi)(B). Therefore, the district court committed a procedural error by relying on an erroneous factor. *See Gall*, 128 S. Ct. at 597; *United States v. Burnette*, 518 F.3d 942, 949 (8th Cir. 2008), *petition for cert. filed*, --- U.S.L.W. --- (U.S. June 4, 2008) (No. 07-11317) (stating that a district court commits a procedural error when it considers an improper factor).[2]

---

[1]Because we hold that Steburg's and Boldon's participation in the conspiracy resulted in five or more participants, we need not address the Government's arguments concerning whether other individuals participated in the conspiracy or whether the conspiracy was "otherwise extensive" under U.S.S.G. § 3B1.1(b).

[2]Because we hold that the district court committed procedural errors, we do not address the next step of the Government's argument and determine whether Garcia-Hernandez's sentence is substantively unreasonable because he is not similarly situated with the other defendants. *See Gall*, 128 S. Ct. at 597; *United States v. Desantiago-Esquivel*, 526 F.3d 398, 401-02 (8th Cir. 2008) (remanding the case for resentencing after determining that the district court committed a procedural error and declining to review the sentence for substantive reasonableness at that time because of the procedural error); *see also United States v. Smart*, 518 F.3d 800, 804-05 (10th

## III.   CONCLUSION

For the foregoing reasons, we affirm Garcia-Hernandez's convictions but vacate his sentence and remand for resentencing consistent with this opinion.

_____

Cir. 2008) (stating that "whether any . . . disparity [between codefendants] justifies a sentencing variance in a given case raises a . . . question . . . of substantive reasonableness").