SMITH, Circuit Judge,
dissenting.
I respectfully dissent. The majority adopts a heightened standard of review for sufficiency-of-the evidence challenges when the conviction is based on an erroneous jury instruction on one of the elements of the offense. In such cases, according to the majority, we may affirm the conviction if the evidence satisfies the statutory element — but only if we “ ‘conelude[ ] beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence ... and no rational juror, if properly instructed, could find that the element was not satisfied.’ ” Supra Part II (quoting Inman, 558 F.3d at 749). Because I believe that the evidence on the jurisdictional element of Johnson’s receipt conviction was “overwhelming” and “incontrovertible,” I would affirm Johnson’s receipt conviction.
As an initial matter, Inman itself did not create a new standard of review. Indeed, as the majority notes, the Inman court observed that two circuits have treated sufficiency challenges involving an erroneous jury instruction just like any other sufficiency challenge, but the court found that it could “resolve the appeal without deciding whether it is appropriate to apply the deferential standard of review” used by those circuits. 558 F.3d at 749 (citing Guevara, 408 F.3d at 258; Zanghi, 189 F.3d at 79). Instead, the Inman court concluded that it could affirm the conviction because, on the facts of that case, the evidence was “overwhelming or incontrovertible” on the disputed element. Id. Thus, Inman clearly declined to adopt a precise standard of review. The majority now “adopt[s] Inman’s rigorous ... standard,” supra Part II, but also goes much further, effectively turning this court’s standard of review for sufficiency challenges on its head.
The standard of review for a “typical” sufficiency challenge is quite familiar but nevertheless worth reviewing. “We review the sufficiency of the evidence de novo, viewing evidence in the light most favorable to the government, resolving conflicts in the government’s favor, and accepting all reasonable inferences that support the verdict.” United States v. Scofield, 433 F.3d 580, 584-85 (8th Cir.2006) (quotation and citation omitted). In addition, “we must not weigh the evidence or assess the credibility of witnesses.” United States v. Garcia-Hernandez, 530 F.3d 657, 661 (8th Cir.2008) (quotation and citation omitted). Finally, we will not lightly overturn a jury’s guilty verdict. United States v. Van Nguyen, 602 F.3d 886, 897 (8th Cir.2010). The majority’s analysis, in contrast, grants all reasonable inferences and views the evidence in the light most favorable to Johnson — the appellant — and not to the jury’s guilty verdict.
As the majority notes, Johnson only challenges the sufficiency of the evidence as to the jurisdictional element. The majority acknowledges that this element, as charged in the indictment, would be established if the evidence showed that Johnson *925 acquired the child pornography from the Internet. See supra Part II. In a videotaped confession admitted at trial, Johnson confessed to acquiring the child pornography from the Internet, viewing it online after following various links. The majority, however, states that Johnson “recanted” this confession at trial. On direct examination, Johnson and his counsel had the following exchange about whether Johnson downloaded any child pornography from the Internet:
Q. So [Detective Kelly] mentioned in her testimony yesterday that you denied downloading anything.
A. Correct.
Q. Or at least knowingly downloading anything?
A. Correct.
Q. Having watched the tape [of the videotaped confession], is [sic] there parts on that where you’re not comfortable that you told them the whole truth?
A. Yes.
Q. How so?
A. Well, because basically by telling them what I did, it led them to believe other things and — which weren’t true.
Q. Why don’t you be more specific. Tell the jury what you mean.
A. If you see something, it’s not the same as if you download something ....
Later, Johnson had the following exchange with his counsel about how the child pornography might have ended up on his computer’s hard drive:
Q. In the video you mention that you had, I think your words were stumbled upon things that you thought were inappropriate pictures of children, child pornography?
A. Correct. You can’t avoid that online.
Q. Then you’re pressed about downloading it in the video. Do you recall that portion?
A. Yes.
Q. And eventually you seem to agree, okay, I downloaded it, or I believe your exact words were, I download everything?
A. Yes.
Q. Did you intentionally download pictures of child pornography?
A. Absolutely not....
Q. You understand watching the video that you say several times, I download everything, and in the context of the conversation, it’s taken as, and you seem to be agreeing with, well, that means you downloaded child pornography, too?
A. In that state of mind, I would have said anything, yes.
* * *
Q. Obviously, there are pictures on your computer?
A. Yes.
Q. How did they get there?
A. I have no idea. If I did, I would not be sitting here right now.
Q. Do you understand you’re charged with knowingly receiving pictures of sexual depictions of children? Did you knowingly receive any of those things?
A. No, I did not.

Q. You mentioned before you’ve seen such photographs ?

A. Yeah. You can’t avoid seeing that stuff. If you look at any adult pom whatsoever, you will find everything.

Q. And I think you mentioned in the conversation, you had seen it, you would click on it, it’s like a plane wreck or train wreck to you?

*926
A. Correct.

Q. Other than that, did you intentionally or knowingly try to keep any of that?
A. No, I did not.
Q. How about possessing it? Did you knowingly or intentionally try to possess any of those things?
A. No, I did not----
(Emphases added.) On cross-examination, Johnson had the following exchange with the government attorney:
Q. During the course of your conversation with Detective Kelly, you admitted that you had found child pornography when you were looking at adult pornography, correct?
A. You see it as advertisements, yes.
Q. Isn’t it true, Mr. Johnson, that you downloaded a number of child pornography images from the Internet to your laptop computer?
A. Absolutely not....
Taken as a whole, Johnson’s testimony does not amount to a full recantation of his videotaped confession. Johnson’s testimony not only failed to contest his videotaped statement that the child pornography came from the Internet,[4] but his testimony actually reaffirmed that the child pornography came from the Internet. Indeed, much like his videotaped confession, Johnson testified that he saw the child pornography “online” and agreed that he had “click[ed] on” links to child pornography while looking at adult pornography. To the extent Johnson recanted his videotaped confession, he only stated that he did not “knowingly or intentionally” download the child pornography and had “no idea” how it got on his computer. But this recantation would only dispute the mens rea element of the offense; it would not dispute the jurisdictional element. In other words, reading his testimony as a whole, Johnson denied knowing how the child pornography got onto his computer; he never denied— and, in fact, he reaffirmed — that he came across the child pornography on the Internet. The majority, however, would read Johnson’s testimony much more broadly, viewing it in a light that is far more charitable to Johnson.
Moreover, the majority opinion reweighs the credibility of Johnson’s testimony. If the jury had believed Johnson’s testimony, including his partial recantation of his videotaped confession, it would not have convicted him because it could not have found the mens rea element of the offense. But the jury did convict Johnson, allowing this court to conclude, quite confidently, that it discredited Johnson’s testimony. Inman’s heightened standard of review does not alter this court’s longstanding rule that the appellate court cannot revisit a jury’s credibility assessment when reviewing the sufficiency of the evidence on appeal. Garcia-Hemandez, 530 F.3d at 661. Yet the majority effectively does just that, stating that, based in part on Johnson’s trial testimony, “a rational jury certainly could have concluded that the government failed to prove the [interstate-commerce] element beyond a reasonable doubt.” Supra Part II.
Finally, the majority grants one more inference in favor of Johnson. As the majority notes, the government’s expert *927 witness could not identify the source (i.e., the Internet, a CD, or a friend) of the child pornography found on Johnson’s computer. This fact, however, does not dispute the evidence that Johnson came across the child pornography on the Internet. The majority essentially views this indeterminate testimony in the light most favorable to Johnson, suggesting that it somehow undermines the evidence' — including the videotaped confession and Johnson’s own trial testimony — on the jurisdictional element.
In sum, the majority’s analysis dramatically alters this court’s review of sufficiency-of-the-evidence challenges. Under the majority’s approach, whenever a defendant’s conviction was based on an erroneous jury instruction — regardless of whether he challenged the instruction at trial or on appeal — this court would review his sufficiency-of-the-evidence challenge under the exact opposite framework than what this court employs in a “typical” sufficiency challenge. Rather than “viewing evidence in the light most favorable to the government, resolving conflicts in the government’s favor, and accepting all reasonable inferences that support the verdict,” Scofield, 433 F.3d at 584-85, this court would now view the evidence and grant reasonable inferences in the defendant’s favor. Rather than declining to “assess the credibility of witnesses” on appeal, Garcictr-Hemandez, 530 F.3d at 661, this court would be able to ignore the jury’s assessment of the witnesses.
Even assuming Inman can be read as requiring a more rigorous standard of review when the appellant’s conviction is based on an erroneous jury instruction, that standard would only require this court to consider whether “the evidence is so overwhelming or incontrovertible that there is no reasonable doubt that any rational jury would have found that the government proved the statutory element.” Inman, 558 F.3d at 749. It would not require this court to abandon its entire framework for reviewing the sufficiency of the evidence on appeal. Because I believe the evidence on the jurisdictional element of the receipt charged was “overwhelming” and “incontrovertible,” I would affirm Johnson’s conviction for receiving child pornography. As a result, I would address the merits of Johnson’s argument that his convictions for receiving and possessing the same images of child pornography violate the Double Jeopardy Clause.

. As noted above, Johnson did deny that he “downloaded” the child pornography from the Internet. However, he never denied that he saw the child pornography online. This is a meaningful distinction. Johnson’s defense throughout trial was that he might have inadvertently viewed child pornography online, but he did not save the images to his computer. Again, by denying that he downloaded the child pornography from the Internet, Johnson’s testimony — taken as a whole — reveals that he only disputed the mens rea element of the offense.