# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

_____

No. 05-3589

_____

|  |  |  |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Southern District of Iowa. |
| Patricio Sandoval-Rodriguez, | * | |
| | * | [PUBLISHED] |
| Appellant. | * | |

_____

Submitted: April 19, 2006
Filed: July 11, 2006

_____

Before WOLLMAN, HANSEN, and BENTON, Circuit Judges.

_____

HANSEN, Circuit Judge.

Following a jury verdict finding Patricio Sandoval-Rodriguez (Sandoval) guilty of conspiring to distribute cocaine and marijuana, see 21 U.S.C. §§ 841(b)(1)(A) & 846, and of being an illegal alien in possession of a firearm, see 18 U.S.C. § 922(g)(5)(A), Sandoval pleaded guilty to a third charge of illegal reentry into the United States, see 8 U.S.C. § 1326(a). Sandoval appeals his conviction and his 200-month sentence. We affirm the district court's[1] judgment.

_____

[1]The Honorable Ronald E. Longstaff, then Chief Judge of the United States District Court for the Southern District of Iowa.

# I.

Sandoval was indicted, along with codefendants Augustin Sandoval-Rodriguez (Sandoval's brother whom we will refer to as Augustin for simplicity) and Bobbie Sue Pollard (Augustin's girlfriend), for their drug distribution activities in Des Moines, Iowa. Special Agent Patrick Waymire of the Iowa Division of Narcotics Enforcement received information from a confidential informant in May 2004 that Augustin and Pollard were involved in dealing drugs. He received information from a second confidential source in July 2004 that they had firearms at their residence and that Augustin possibly kept drugs at his brother's residence at 125½ NW Aurora Street in Des Moines. Agent Waymire and three other agents followed up on the investigation and visited Pollard and Augustin's residence on July 16, 2004. Pollard gave Agent Waymire verbal consent to search the residence.

Following the consensual search and the seizure of several drug-related items, Pollard agreed to speak to Agent Waymire. She told Agent Waymire that she had dated Augustin for two years, kept drug notes for him, and accompanied him to deliver cocaine at a residence on Walnut Street in Des Moines. Pollard also told Agent Waymire that she believed that Augustin picked up his drugs from his brother's residence at 125½ NW Aurora Street and that she had seen user quantities of marijuana at Sandoval's residence within the last two weeks.

Shortly after this interview, law enforcement officers went to Sandoval's residence to question him about the drug investigation. When the officers knocked on the door, several people, including Sandoval, attempted to flee and were detained. The officers conducted a protective sweep of the house, during which they discovered narcotics, firearms, and drug paraphernalia in plain view. After the protective sweep, the officers secured the house and detained the occupants until they secured a warrant to search the house. The subsequent search revealed 161 grams of cocaine, 620 grams

of marijuana, $31,837 in cash, several handguns, ammunition, and drug paraphernalia. Sandoval was arrested and taken into custody.

Sandoval was indicted for conspiring to distribute an unspecified amount of cocaine and marijuana. A Grand Jury returned a superseding indictment specifying drug weights of at least five kilograms of cocaine and at least 100 kilograms of marijuana, which implicated the heightened penalty provisions of 21 U.S.C. § 841(b)(1)(A). In support of the superseding indictment, the government offered testimony from four witnesses, three of whom also testified at Sandoval's trial.

On January 14, 2005, Sandoval moved to suppress evidence obtained from the search of his residence, arguing that the affidavit submitted by Agent Waymire in support of the search warrant contained knowing misstatements of fact concerning whether Pollard had witnessed Augustin retrieve drugs from Sandoval's residence. The district court noted a discrepancy between the warrant application affidavit and a subsequent report prepared by Agent Waymire concerning his interview with Pollard, but the district court determined that the affidavit supported probable cause even without the information attributed to Pollard.

On January 14, 2005, Sandoval also filed a motion to disclose the identity of the witnesses who testified at the Grand Jury hearing. The magistrate judge granted the motion in part and ordered the government to disclose the identities of three of the witnesses no later than two weeks before the scheduled trial date of March 7, 2005, and to disclose the fourth witness at least one week before trial. Following the government's disclosure of the witnesses, the district court granted Sandoval's subsequent motion to continue the trial to May 2, 2005. On the first day of trial, Sandoval moved to exclude three other government witnesses based on the government's late disclosure of the witnesses. The district court granted the motion as to two of the witnesses based on unfairness to the defense. The district court allowed the testimony of William Quinn, the third witness.

Three witnesses in addition to Quinn testified about their drug dealings with Sandoval. Following Quinn's testimony, Sandoval renewed his objection to Quinn's testimony and moved for a mistrial, which the district court denied. The jury found Sandoval guilty of the conspiracy and the possession of a firearm by an illegal alien charges, and Sandoval later pleaded guilty to the charge of being an illegal alien unlawfully in the United States following deportation.

In arriving at an advisory Guidelines sentencing range, the district court started its base offense level calculation at level 34, two levels lower than recommended in the Presentence Investigation Report, reasoning that the drug quantity attributed to Sandoval was only slightly greater than the amount triggering a base offense level of 36. The district court then added two levels for possession of a firearm in connection with a drug offense and rejected Sandoval's request for a two-level downward adjustment for acceptance of responsibility. The district court calculated an advisory Guidelines range of 188 to 235 months and sentenced Sandoval to 200 months of imprisonment. Sandoval appeals.

## II. Motion to Suppress

Sandoval claims that the district court erred in denying his motion to suppress evidence obtained pursuant to the search warrant because the affidavit supporting the warrant application contained material misstatements by the affiant. We review the district court's factual findings supporting the denial for clear error, but we review de novo its legal conclusion that Sandoval's Fourth Amendment rights were not violated. See United States v. Spencer, 439 F.3d 905, 913 (8th Cir. 2006). "We must affirm an order denying a motion to suppress unless the decision is unsupported by substantial evidence, is based on an erroneous view of the applicable law, or in light of the entire record, we are left with a firm and definite conviction that a mistake has been made." Id. (internal citations and marks omitted).

Sandoval makes a Franks[2] challenge to the affidavit supporting the warrant application, arguing that it contained material misleading statements. In support of the search warrant application, Agent Waymire stated in the affidavit that Pollard told him that Augustin picked up a black trash bag containing narcotics from Sandoval's residence at 125½ NW Aurora Street, Des Moines, Iowa. Sandoval claims that this statement is misleading because Agent Waymire's subsequently-prepared report of the interview stated that Pollard drove Augustin to Sandoval's residence, but that she waited outside in the car. Thus, Pollard did not witness Augustin retrieve drugs from Sandoval's residence, and, according to Sandoval, the statement suggesting to the contrary in the warrant application was intentionally false, or at least made in reckless disregard for the truth.

To prevail on a Franks challenge to a search warrant application, the defendant must establish "that a false statement was included in the affidavit knowingly and intentionally or with reckless disregard for its truth, and that the affidavit's remaining content is insufficient to establish probable cause." United States v. Roberson, 439 F.3d 934, 939 (8th Cir. 2006). Even if the contested statements are false and misleading, the search warrant may still stand if the offending statements are removed and the remaining statements in the application would support a finding of probable cause to support the search warrant. Id.

Pollard's statements to Agent Waymire were not the only facts recited in the warrant application. The application also included the following information: a confidential informant had informed Agent Waymire that Augustin stored narcotics at Sandoval's Aurora Street residence; upon the officers' arrival at the Aurora Street address, several occupants, including Sandoval, attempted to flee; and the officers observed narcotics, firearms, and drug paraphernalia during a protective sweep of the Aurora Street residence. These facts more than support a finding of probable cause

---

[2]Franks v. Delaware, 438 U.S. 154 (1978).

to support the search warrant without considering the information supplied by Pollard. The district court properly denied Sandoval's motion to suppress the evidence.

## III. Quinn Testimony

We will reverse the district court's refusal to exclude the testimony of William Quinn based on the government's alleged late disclosure only if the district court abused its discretion in so ruling. See United States v. Pherigo, 327 F.3d 690, 694 (8th Cir.) (standard of review for alleged discovery deadline violation), cert. denied, 539 U.S. 969 and 540 U.S. 960 (2003). "In our review we consider (1) whether the Government acted in bad faith and the reason(s) for delay . . .; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance." Id.

The government notified Sandoval's counsel on the afternoon of April 29, 2005, the Friday before the Monday, May 2 trial start date, that it intended to call three additional witnesses not previously disclosed, including Mr. Quinn, and it offered to make available government interview reports, criminal records, and plea agreements pertaining to the proposed witnesses. Sandoval's attorney responded that he was not interested in receiving the materials only one business day prior to trial. On May 2, Sandoval moved to exclude the three witnesses based on the government's late disclosure. The district court held a hearing on the motion prior to the start of the trial and granted the motion as to two of the proposed witnesses. The district court concluded that the government was not dilatory in its discovery efforts related to Quinn because he had previously been a target of the same drug investigation, was represented by counsel, and had just entered into a cooperation agreement with the government the week before trial. The court also concluded that Sandoval would not be prejudiced by Quinn's testimony as the government did not intend to call him until the following day, giving Sandoval's counsel sufficient time to review his materials.

-6-

Sandoval argues that the government violated the district court's February 3, 2005, order requiring disclosure of witnesses two weeks prior to trial. Initially, we note that the February 3 order addressed four specific witnesses who provided information to the government that led to the superceding indictment. Although Sandoval's Motion to Disclose Identity of Witnesses sought "an Order requiring the government to immediately disclose the identity and all information regarding all witnesses it intends to call at trial," (Dist. Ct. R. Docket Entry # 56), the order entered by the district court was clearly limited to the disclosure of the four specific witnesses (none of whom was Mr. Quinn) who provided information that led to the superceding indictment. The government's failure to disclose Quinn as a witness at an earlier date did not violate the district court's February 3, 2005, order.

Even if the government's late disclosure violated the district court's general discovery and pretrial orders, we still conclude that the district court did not abuse its discretion in allowing Quinn to testify. The government had been investigating Quinn's involvement in the drug conspiracy since December 2004. Although Quinn had been interviewed by the investigators, he did not enter into a cooperation agreement with the government and agree to testify against Sandoval until April 26, 2005, three days before the government identified him as a witness. Given the late date of Quinn's agreement to cooperate, the prosecution did not act in bad faith, and its reason for the late disclosure was justified. See United States v. Askew, 958 F.2d 806, 813 (8th Cir. 1992) (finding no prosecutorial misconduct where government disclosed witness four days before trial, the day the witness pleaded guilty and agreed to cooperate).

Nor was Sandoval prejudiced by the late disclosure. The government offered to provide materials about Quinn to Sandoval's attorney three calendar days prior to the start of the trial. Sandoval's attorney rejected the materials at that time, choosing instead to move to exclude Quinn's testimony. Sandoval did not ask for a continuance to allow him adequate time to review the materials, even after the district court denied

his motion to exclude Quinn's testimony. The district court found the one-day time frame sufficient for Sandoval's attorney to review Quinn's material and prepare a defense to his testimony. Sandoval's attorney also cross-examined Quinn at trial. Sandoval does not explain how he was prejudiced other than the lateness of the disclosure itself. In these circumstances, Sandoval has failed to establish that he was prejudiced by the government's late disclosure of Quinn as a witness. See United States v. Washington, 318 F.3d 845, 857-58 (8th Cir.) (finding no abuse of discretion in district court's decision to allow government witness to testify who was disclosed two days prior to her testimony where the government provided related information to the defense and the defense was allowed to interview and cross-examine the witness), cert. denied, 540 U.S. 884 & 899 (2003); United States v. DeCoteau, 186 F.3d 1008, 1010-11 (8th Cir. 1999) (reversing the district court's order striking the government's witnesses for a discovery deadline violation and noting that the defendant's failure to request a continuance supported a finding that the defendant was not prejudiced).

"As a general rule, a defendant in a noncapital case has no right to require disclosure of government witnesses." DeCoteau, 186 F.3d 1009 at n.2; see also Fed. R. Crim. P. 16(a)(2) ("Nor does this rule authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500 [Jencks Act]."). That being said, due process and notions of fair play require the government to disclose all evidence that is "favorable to an accused" and "material either to guilt or to punishment." Brady v. Maryland, 373 U.S. 83, 87 (1963). Sandoval made a Brady claim in his motion for a mistrial following Quinn's testimony. In reviewing a Brady claim, we have held that "[t]he government's disclosure pattern in a given case does not offend Brady . . . so long as the evidence in question is disclosed prior to the end of trial." United States v. Holmes, 421 F.3d 683, 687 (8th Cir. 2005) (citing United States v. Almendares, 397 F.3d 653, 664 (8th Cir. 2005), cert. denied, 126 S. Ct. 1448 (2006); United States v. Gonzales, 90 F.3d 1363, 1368 (8th Cir. 1996)). The government disclosed Quinn as a witness and

offered its material related to Quinn's plea agreement three days before trial began, Quinn was not called until the second day of trial, and Sandoval's attorney was allowed to cross-examine him at trial. There was no Brady violation.

## IV. Sentencing Issues

We reject Sandoval's argument that the district court's imposition of a two-level enhancement for possessing a dangerous weapon in connection with the drug conspiracy convictions, U.S. Sentencing Guidelines (USSG) Manual § 2D1.1(b)(1), violated the Sixth Amendment as construed in Booker v. United States, 543 U.S. 220 (2005). The Supreme Court remedied the Sixth Amendment violations that resulted from the mandatory application of the Guidelines by making the Guidelines advisory. Id. at 259. District courts continue to apply Guidelines enhancements based on judge-made fact-findings found by a preponderance of the evidence, as long as the Guidelines are treated as advisory. See United States v. Mugan, 441 F.3d 622, 633 (8th Cir. 2006) ("Booker did not change the standard of proof for a sentencing court's factual findings."); United States v. Garcia-Gonon, 433 F.3d 587, 593 (8th Cir. 2006) ("Because the district court applied the Guidelines as advisory, there is no Booker error present in this case."). The district court did not violate the Sixth Amendment by making the necessary fact-findings to support the enhancement.

We likewise reject Sandoval's claim that his 200-month sentence, within the applicable 188- to 235-month Guidelines range, was unreasonable. We review the district court's ultimate sentence for reasonableness, a "'standard akin to our traditional review for abuse of discretion,'" United States v. Gall, 446 F.3d 884, 889 (8th Cir. 2006) (quoting United States v. Claiborne, 439 F.3d 479, 481 (8th Cir. 2006)), in light of the sentencing factors contained in 18 U.S.C. § 3553(a). In this circuit, a sentence within a properly-calculated Guidelines range is presumed to be reasonable. Id.

The only factors that Sandoval offers to support a sentence lower than the presumptively reasonable Guidelines range are his poor upbringing in Mexico and his lack of a significant prior criminal history. His minimal prior criminal history was taken into account in arriving at the appropriate advisory Guidelines range. Further, his upbringing does not distinguish him from the myriad of other defendants in our criminal justice system. While Sandoval claims to have come to the United States to make a better life for himself and his family, he failed by turning to the drug trade. The sentencing district court judge, who also presided over Sandoval's trial, specifically discussed the § 3553(a) factors and determined that a variance outside of the advisory Guidelines range was not warranted. The district court then sentenced Sandoval in the lower quarter of the advisory range based on its findings that Sandoval had been involved in a substantial drug operation for a number of years and was responsible for getting others involved as well. The sentence imposed by the district court is more than reasonable.

## V. Conclusion

We affirm the district court's judgment.

_____