# United States Court of Appeals

## For the Eighth Circuit

_____

No. 11-3255

_____

United States of America

*Plaintiff - Appellee*

v.

Adrian L. Dunn

*Defendant - Appellant*

_____

No. 11-3256

_____

United States of America

*Plaintiff - Appellee*

v.

Danny R. Moore

*Defendant - Appellant*

_____

No. 11-3257

_____

United States of America

*Plaintiff - Appellee*

v.

Cheo D. Miles

*Defendant - Appellant*

_____

No. 11-3258

_____

United States of America

*Plaintiff - Appellee*

v.

Vincent E. Charles

*Defendant - Appellant*

_____

No. 11-3318

_____

United States of America

*Plaintiff - Appellee*

v.

Dennis L. Westbrook

*Defendant - Appellant*

_____

Appeals from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: February 12, 2013
Filed: July 22, 2013

_____

Before RILEY, Chief Judge, LOKEN and SHEPHERD, Circuit Judges.

_____

LOKEN, Circuit Judge.

After a five-day trial, a jury convicted Adrian Dunn, Cheo Miles, Dennis Westbrook, Danny Moore, and Vincent Charles of conspiring to distribute five kilograms or more of cocaine and convicted Dunn, Westbrook, and Moore of using a communication facility to facilitate cocaine distribution. See 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 843(b) and (d), and 846. The district court[1] sentenced Dunn to 262 months in prison, Miles and Westbrook to 240 months, Moore to 175 months, and Charles to 151 months. In these consolidated appeals, they raise many challenges to their convictions and sentences. We will first address two issues raised by more than one appellant and then take up additional issues raised by each. We affirm the convictions and sentences.

## I. Sufficiency of the Evidence

Dunn, Moore, and Charles argue the evidence was insufficient to support their cocaine conspiracy convictions. To convict a defendant of conspiracy to distribute cocaine, the government must prove the defendant knew of and intentionally joined

_____

[1]The Honorable Nanette Laughrey, United States District Judge for the Western District of Missouri.

-3-

a conspiracy (agreement) to distribute cocaine. United States v. Huggans, 650 F.3d 1210, 1222 (8th Cir. 2011), cert. denied, 132 S. Ct. 1583 (2012). We review the sufficiency of the evidence *de novo*, viewing evidence in the light most favorable to the jury's verdict, resolving conflicts in the government's favor, and accepting all reasonable inferences that support the verdict. United States v. Miller, 698 F.3d 699, 702 (8th Cir. 2012), cert. denied, 133 S. Ct. 1296 (2013).

At trial, the government presented testimony by numerous law enforcement agents and then by its primary witness, conspiracy leader Alejandro Corredor, pursuant to his plea agreement. Corredor testified that, from the summer of 2007 until his arrest in June 2009, he received forty to fifty kilograms of cocaine each month from his contacts in Mexico, which he then supplied on consignment to distributors in the Kansas City area, usually in kilogram quantities. Beginning in 2007, Dunn sold about eight kilograms of cocaine per month for Corredor, Westbrook about four kilograms of cocaine per month, and Charles about one kilogram per month. Beginning in the summer of 2008, Corredor stored twenty to forty kilograms of cocaine per month at the house of his good friend Moore. Corredor knew Miles because he was "always with [Dunn]." Corredor usually met Dunn at a house in Kansas City near 87th and Kentucky to drop off cocaine or pick up money. On four or five occasions, Miles was the one "receiving the drugs or giving me the money."

As part of its investigation, the government placed a wiretap on Corredor's phone; it introduced at trial dozens of recorded calls between Corredor and the defendants. Corredor identified each defendant as the speaker on certain calls and testified the calls pertained to cocaine transactions, explaining the use of code words that referred to drugs and nicknames or aliases that referred to defendants. The government also presented testimony by other conspirators. Appellants' challenge to the admission of this testimony is discussed in Part II, *infra*. We need not describe the testimony in this Part because we conclude that Corredor's testimony combined

with the recorded calls and extensive testimony by the investigating agents were sufficient to support the conspiracy convictions of Dunn, Moore, and Charles.

On appeal, Dunn, Moore, and Charles argue that only Corredor's testimony supports their convictions because the government presented no evidence that law enforcement agents directly observed their involvement in drug-related activity. Appellants urge us to consider Corredor's testimony unreliable due to inconsistencies with his pre-trial proffers, contradictions with testimony by other witnesses, Corredor's admission that he had lied to law enforcement in the past, and his incentive to lie created by his hope of a lesser sentence and the government's promise not to seek the death penalty for his involvement in arranging a homicide and an attempted homicide on behalf of his Mexican drug suppliers.

"We have repeatedly upheld jury verdicts based solely on the testimony of co-conspirators and cooperating witnesses, noting that it is within the province of the jury to make credibility assessments and resolve conflicting testimony." United States v. Coleman, 525 F.3d 665, 666 (8th Cir.), cert. denied, 555 U.S. 958 (2008). Corredor's testimony supported the jury's findings that Dunn, Moore, and Charles knew of and intentionally joined a conspiracy to distribute cocaine. Inconsistencies and motivations for bias were thoroughly developed on cross-examination and were rejected by the jury. We reject Dunn's contention there was insufficient evidence for the jury to find him responsible for at least 5 kilograms of cocaine and for the district court at sentencing to find him responsible for at least 15 kilograms of cocaine.

Dunn and Moore also challenge the sufficiency of the evidence to convict them of using a communication facility to facilitate cocaine distribution because the only evidence implicating them in drug-related phone calls was Corredor's unreliable testimony. As Corredor's credibility was an issue for the jury, the evidence was also plainly sufficient to support these convictions.

## II.  Late Disclosure of Government Witnesses and Proffer

**A.**  At a pretrial conference, the court directed that witness lists be submitted by late January 2011.  After this deadline, the government disclosed, one week prior to the February trial, six trial witnesses not on its witness list.  Defendants filed motions *in limine* to exclude these newly disclosed witnesses.  The district court excluded two witnesses and then heard argument on the others prior to the start of trial, focusing on witnesses Terrance Harris and Joel Guevara.  The government explained that Harris would testify to acquiring cocaine from defendants Dunn and Charles, and Guevara would testify he saw Westbrook bring cash to Charles's house.  The court expressed disappointment with the government's unexcused late disclosures but noted defense counsel were provided proffer statements "a week ago" and asked how the defense would be prejudiced.  Counsel complained that they had prepared to defend only against Corredor, "who is not the most credible witness."  Defendants declined the court's offer of a continuance to prepare for these newly disclosed witnesses.  The court then denied the motion to exclude those witnesses because "in fact, you had enough time."

On appeal, Dunn, Westbrook, and Charles argue the district court erred in denying their motions *in limine* to exclude late-disclosed witnesses Harris, Guevara, and Keith Rayford.  We review the district court's ruling for abuse of discretion, considering "(1) whether the Government acted in bad faith and the reason(s) for delay . . . ; (2) whether there is any prejudice to the defendant; and (3) whether any lesser sanction is appropriate to secure future Government compliance."  United States v. Sandoval-Rodriguez, 452 F.3d 984, 989 (8th Cir.) (quotation omitted), cert. denied, 549 U.S. 1040 (2006).  "Even if the government failed to disclose a witness in violation of a discovery order, the defendant still has to show prejudice to his substantial rights."  United States v. Washington, 318 F.3d 845, 857 (8th Cir.), cert. denied, 540 U.S. 884, 899 (2003).  Defendants were provided proffer statements a

-6-

week before trial and declined the court's offer of a continuance. As in <u>Sandoval-Rodriguez</u>, we conclude the court did not abuse its discretion because defendants made no showing of prejudice "other than the lateness of the disclosure itself." 452 F.3d at 990.

**B.** During Guevara's direct examination at trial, Dunn objected when Guevara testified to facts incriminating Dunn that were not disclosed in the proffer statement produced to defense counsel. The ensuing colloquy revealed that the government had inadvertently produced only one of Guevara's two proffer statements. Although neither proffer implicated Dunn as Guevara did at trial (government counsel expressed surprise at that testimony), defendants renewed their objections to Guevara's testimony and moved for a mistrial based on the government's mistake. After lengthy argument, the district court denied these motions, instead giving defense counsel a half-hour recess to confer with their clients and prepare for Guevara's cross-examination.

On appeal, Dunn, Westbrook, and Moore argue the district court erred in denying a mistrial, an issue we review for abuse of discretion. <u>See</u> <u>United States v. Benson</u>, 686 F.3d 498, 504 (8th Cir. 2012), <u>cert. denied</u>, 133 S. Ct. 877 (2013). In denying a mistrial, the district court explained that defendants were now provided Guevara's second proffer statement. "You've identified [what] you want to talk about, and you're free to go ahead and talk about it." Their objection that the proffer would have been useful in cross examining Corredor did not warrant a mistrial, the court explained, because Corredor "was impeached in so many different ways that it's trivial to think that this one additional piece of information was somehow the linchpin." Thus, the court concluded, any prejudice to defendants or benefit to the government "is so small, I'm not going to grant a mistrial."

We conclude that defendants fall far short of showing a prejudicial abuse of discretion. "The decision of whether or not to grant a mistrial is made by the district court, which is in far better position to measure the effect" of, and to cure, a mistake such as untimely disclosure of a witness's proffer statement. Washington, 318 F.3d at 859. Though the late-disclosed proffer included new information, the district court gave defense counsel time to review the proffer with their clients, and defendants cross-examined Guevara extensively concerning the newly disclosed information. Contrary to Moore's *pro se* supplemental brief, late disclosure of Guevara's second proffer did not violate the government's duty to disclose exculpatory material, see Brady v. Maryland, 373 U.S. 83, 87 (1963), because the information was disclosed before the end of trial. See Sandoval-Rodriguez, 452 F.3d at 990.[2]

## III. Additional Issues

**A. Adrian Dunn.** The government received court authorization to wiretap Corredor's telephone on March 3, 2009. On May 9, the government applied to extend the authorization, listing Dunn as a "target subject." The government terminated the wiretap on June 12, 2009. The district court denied Dunn's pretrial motion to suppress all wiretap conversations that allegedly involved Dunn.

1. Dunn argues the district court committed plain error when it authorized the extension of the wiretap because the government lacked probable cause to add Dunn's name to the application and failed to show that other investigative procedures were tried and failed *with regard to Dunn*. Dunn did not raise this issue in his pretrial motion to suppress. Therefore, the issue was waived, absent a showing of good cause Dunn has not made. See United States v. Green, 691 F.3d 960, 965 (8th Cir. 2012);

---

[2]Moore's argument that information he discovered after trial could be used to impeach Corredor's trial testimony is not properly before us on direct appeal.

Fed. R. Crim. P. 12(e). In any event, there was no plain error. The statute, 18 U.S.C. § 2518(1)(b)(iv), does not prohibit the government from listing someone as a target subject even if probable cause is lacking as to that person. See United States v. Martin, 599 F.2d 880, 884-85 (9th Cir.) (applying United States v. Donovan, 429 U.S. 413, 423-28 (1977)), cert. denied, 441 U.S. 962 (1979). Naming Dunn in the application to extend in no way detracted from the sufficiency of the showing that authorized the initial wiretap, which Dunn does not challenge.

2. Dunn argues the district court erred in denying his motion to suppress because the government failed to provide notice of the recorded calls within 90 days of the wiretap's termination, as required by 18 U.S.C. § 2518(8)(d). We disagree. "Failure to meet the notice requirement of section 2518(8)(d) does not render 'unlawful an intercept order that in all other respects satisfies the statutory requirements.'" United States v. Davis, 882 F.2d 1334, 1344 (8th Cir. 1989) (quoting Donovan, 429 U.S. at 434), cert denied, 494 U.S. 1027 (1990). Moreover, Dunn's counsel admitted receiving transcripts of the intercepted calls less than 90 days after the wiretap terminated. Thus, Dunn had actual notice within 90 days and failed to show prejudice. Davis, 882 F.2d at 1344.

3. Dunn argues the district court erred in denying his pretrial motion *in limine* because Special Agent Mark King did not properly identify Dunn as the speaker on any recorded calls at a December 2010 suppression hearing. This was not grounds for suppression or exclusion; identification was an issue for the jury at trial. Corredor testified he recognized Dunn's voice on the calls in question; the credibility of that testimony was for the jury. We fail to see how Agent King's testimony at a suppression hearing, even if mistaken, undercut admission of the intercepted calls at trial based on *Corredor's* testimony that Dunn was the speaker. Thus, the district court did not err in denying Dunn's motion to suppress or his motion *in limine*.

4. Dunn argues the district court committed plain error in "allowing" Special Agent Scott Francis to testify at the grand jury proceedings and Agent King to testify at Dunn's detention hearing that Dunn was involved in drug-related telephone calls because neither had personal knowledge or other evidence that Dunn's voice was on the calls. We agree with the government that these contentions are without merit because the petit jury's subsequent guilty verdict rendered any errors either harmless or moot. See United States v. Wilson, 565 F.3d 1059, 1070 (8th Cir. 2009), cert. denied, 558 U.S. 1117 (2010); United States v. Gill, 104 Fed. App'x 596, 597 (8th Cir. 2004). The government's failure to call grand jury witness Francis at the subsequent criminal proceedings did not violate Dunn's Confrontation Clause rights.[3]

5. Trial was scheduled to begin July 20, 2009. A June 26 discovery order required the government to disclose discovery to Dunn by July 6. At a July 1 scheduling conference, the government stated it would ask for a trial continuance and an extension of the discovery order; defendants said they wanted to keep the July 20 trial date. The magistrate judge instructed the government to file a motion for a continuance in writing and scheduled a July 6 pretrial conference. That pretrial conference did not take place. On July 16, Dunn's former counsel moved for a continuance, without Dunn's consent. The court granted a continuance on July 22. Dunn received the government's discovery in August 2009. In October 2010, he moved to suppress all evidence not disclosed before July 6, 2009. On appeal, he argues the district court (i) denied a speedy trial by failing to hold the July 6 pretrial conference, and (ii) erred by denying his motion to suppress. We review these issues for plain error.

---

[3]In his *pro se* brief, Dunn also argues his Confrontation Clause rights were violated when Agent King testified at the suppression hearing, rather than Agent Francis, who drafted the wiretap extension application. This contention is without merit. King's testimony did not address wiretap suppression issues.

(i) The Speedy Trial Act requires that trial begin within 70 days after a defendant is charged or first appears, but any delay resulting from a continuance granted at the request of the defendant or his counsel is excluded if the judge finds that the ends of justice served by the continuance outweigh the interests in a speedy trial. 18 U.S.C. § 3161(h)(8)(A). Here, Dunn's counsel moved for a continuance; the court granted a continuance, making the required finding. Dunn's personal consent was not needed. See United States v. Herbst, 666 F.3d 504, 510 (8th Cir. 2012).

(ii) In denying Dunn's motion to suppress evidence not produced before July 6, 2009, the district court found that the government made discovery available on July 1 when it informed defendants after the scheduling conference that they could access the files at the U.S. Attorney's office. This fact finding was not clearly erroneous. See United States v. Arrocha, 713 F.3d 1159, 1160 (8th Cir. 2013) (standard of review). Moreover, if Dunn did not receive discovery until August 2009, he was not prejudiced by the delay because trial did not take place until February 2011.

6. Dunn next argues the district court erred in denying his pretrial motion to suppress evidence found during a warrant search at the 8717 Kentucky Avenue residence. Following an evidentiary hearing, the district court found that Kansas City police officers and federal agents arrived at 8717 Kentucky Avenue at 2:00 a.m. on June 12, 2009, to execute arrest warrants for Dunn and Miles. Miles responded to their knock, refused to unlock the door, took evasive and threatening actions, and was arrested. The officers performed a protective sweep of the house and then maintained a protective presence while applying for a federal search warrant. The warrant issued at 12:30 p.m. that day. During the warrant search, a drug dog alerted to the trunk of a vehicle found in the attached garage. A locksmith opened the trunk, where the officers recovered $41,000 cash, the subject of Dunn's pretrial motion to suppress.

On appeal, Dunn argues that the warrant did not authorize search of the garage or the car, only the residence.[4] He asserts (with little evidentiary support) that he did not reside at 8717 Kentucky Avenue but merely owned the property and stored a locked vehicle in its garage. The district court concluded that the warrant to search the residence allowed the officers to search the attached garage and the vehicle found in the garage. We agree. "When a warrant specifically mentions certain structures, it authorizes a search of these structures and, by implication, any other vehicles, structures, or property not noticeably separate from them." United States v. Pennington, 287 F.3d 739, 744-45 (8th Cir.) (quotation omitted), cert. denied, 537 U.S. 1022 (2002). This includes a vehicle found on the premises, except for the vehicle of a guest. Id.; see United States v. Bulgatz, 693 F.2d 728, 730 n.3 (8th Cir. 1982), cert. denied, 459 U.S. 1210 (1983). Here, the attached garage and the vehicle within it were not noticeably separate from the rest of the house and were therefore included in the warrant's scope. United States v. Swift, 720 F. Supp. 2d 1048 (E.D. Ark. 2010), on which Dunn relies, is distinguishable because it involved probable cause to search a guest's vehicle parked in a driveway.

7. Dunn argues the district court erred in imposing a two-level enhancement for possessing "a dangerous weapon (including a firearm)." U.S.S.G. § 2D1.1(b)(1). To establish either actual or constructive possession, the government must show that Dunn "exercised ownership, dominion, or control either over the firearm or the premises on which it is found." United States v. Payne, 81 F.3d 759, 762 (8th Cir. 1996) (quotation omitted). If possession is established, the enhancement applies "if the weapon was present, unless it is clearly improbable that the weapon was

_____

[4]Dunn argues in a footnote that the arrest warrant did not authorize execution at night. We do not consider this argument because he provided neither the arrest warrant nor supporting case law. See United States v. Acosta, 619 F.3d 956, 962 (8th Cir. 2010), cert. denied, 131 S. Ct. 1618 (2011).

-12-

connected with the offense." U.S.S.G. § 2D1.1(b)(1), comment. (n.3(A)). We review the district court's finding that the enhancement applies for clear error. See United States v. Moore, 212 F.3d 441, 447 (8th Cir. 2000).

Police recovered three weapons during the warrant search at 8717 Kentucky Avenue, one in the living room couch, one on a bed in one bedroom, and one in the closet of another bedroom. Dunn admitted he had a lease-to-own interest in the residence. His vehicle was found in the attached garage, a security services bill in his name was found in the house, and one firearm was found in a bedroom closet where miscellaneous papers relating to Dunn were found. Corredor testified he met Dunn there to exchange drugs or money, and the government introduced recorded calls reflecting that drugs were delivered and money picked up at that address. On this record, the district court did not clearly err in finding that Dunn exercised ownership, dominion, or control over the premises where the guns were found, and that "the weapon was found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place." Payne, 81 F.3d at 763.

8. Dunn argues the district court erred in imposing a statutory minimum sentence for a "prior conviction for a felony drug offense," see 21 U.S.C. §§ 841 and 851, based on his 2001 Missouri conviction for possession of a controlled substance. Reviewing this issue de novo, we conclude the enhancement was properly applied. See United States v. Davis, 417 F.3d 909, 913 (8th Cir. 2005) (standard of review), cert. denied, 546 U.S. 1144 (2006). A "felony drug offense" is "an offense that is punishable by imprisonment for more than one year under any law of the United States or of a State or foreign country that prohibits or restricts conduct relating to narcotic drugs . . . ." 21 U.S.C. § 802(44). The Missouri court imposed a three-year prison sentence, with execution suspended. The enhancement applies even though the conviction was for simple possession and Dunn received a suspended sentence, as long as it was a felony. See United States v. Jones, 559 F.3d 831, 837 (8th Cir.

-13-

2009); Davis, 417 F.3d at 912-13. Dunn's additional unsupported arguments on this issue are without merit.

9. The August 20, 2009, superceding indictment sought criminal forfeiture of extensive property alleged to be used in, or the proceeds of, various defendants' extensive drug trafficking, including Dunn's interests in two described vehicles and $41,000 cash. No preliminary or final forfeiture orders were ever entered in the criminal case. See Fed. R. Crim. P. 32.2(b). In his *pro se* brief, Dunn argues the district court denied him due process and violated Rule 32.2(b)(5)(A) when it failed to determine prior to trial whether any party requested a jury determination as to the forfeitability of his property. See United States v. Gregoire, 638 F.3d 962, 971-72 (8th Cir. 2011). He concedes we review this issue for plain error.

The district court's docket sheets reflect that, five days after filing his *pro se* appeal brief, Dunn filed a *pro se* motion in the closed criminal case alleging that the property in question had been improperly administratively forfeited and asking the district court to vacate the forfeiture orders. The government responded, admitting the property was administratively forfeited by the Department of Homeland Security in October 2009 and April 2011, and arguing that Dunn may set aside those forfeiture orders only by a civil action under 18 U.S.C. § 983(e), not in the criminal case. In April of this year, the district court agreed, denying Dunn's motion without prejudice and directing the Clerk of District Court to send Dunn appropriate forms for pursuing his claims in a civil action.

The government's brief to this court argues, without citation to relevant judicial authority, that 18 U.S.C. § 983(e) is Dunn's exclusive *civil* remedy in this situation. The government does not disclose how Dunn was notified of the government's intent to seek civil forfeiture, other than by its superseding indictment in the criminal case that gave at least implied notice the government would proceed under Rule 32.2.

-14-

That notice was seemingly reinforced in an undated letter from DHS telling Dunn it could not respond to his petition for return of the property "until the AUSAs case plays out." Though § 983 is captioned, "General rules for civil forfeiture proceedings," it expressly provides that the government may proceed "as provided in the applicable criminal forfeiture statute." § 983(a)(1)(A)(iii)(II).

Compliance with the notice and other procedural requirements of these complex statutes and rules is essential to preserving the basic fairness that due process requires. Though § 983(e)(5) provides that its remedy is exclusive, it is by no means clear that this judicial remedy could never be invoked to prevent administrative intrusion on the court's jurisdiction in a criminal case. Thus, had Dunn raised this issue in a timely fashion in the criminal case, the district court may well have had jurisdiction under § 983(e) and Rule 32.2 to vacate the administrative forfeiture orders and direct the government to proceed in accordance with the criminal forfeiture statute and rule it had invoked. We do not decide that question because the issue was not timely raised. For that reason, the district court committed no error, much less plain error, in concluding the criminal case without taking up this issue *sua sponte*. In response to Dunn's belated motion, the district court properly invited him to raise his objections to the administrative forfeiture orders in a civil action. If he does so in a timely manner, and if he can establish that the government invoked its right to seek criminal forfeiture and then improperly proceeded to administratively forfeit his personal interests in property named in the superseding indictment, the court will need to decide whether he is entitled to § 983(e) relief.

**B. Cheo Miles.** Miles argues the district court committed plain error when it failed to instruct the jury on the lesser included offense of conspiring to distribute less than 5 kilograms of cocaine. See United States v. Meeks, 639 F.3d 522, 528 (8th Cir.) (standard of review), cert. denied, 132 S. Ct. 350, 471 (2011). The jury found

Miles guilty of conspiring to distribute 5 kilograms or more. At sentencing, the district court noted: "we've got rock solid evidence [of] at least four kilos [and] I have no doubt that [Miles] was fully aware that there was substantially more than four kilograms that was involved in this conspiracy."[5] Therefore, the court found "that the jury's verdict is well supported by the evidence, and so I will go with that." Based on this quantity finding and Miles's prior conviction for a felony drug offense, the court imposed the statutory minimum sentence of 20 years in prison. See 21 U.S.C. §§ 841(b)(1)(A) and 851.

Prior to the Supreme Court's recent decision in Alleyne v. United States, 133 S. Ct. 2151 (2013), Miles's lesser-included-offense argument was "practically irrelevant" because we construed prior Supreme Court decisions as permitting the district court to impose any sentence within the statutory maximum based on the court's drug quantity finding made by a preponderance-of-the-evidence at sentencing. See, e.g., United States v. Turner, 603 F.3d 468, 471 (8th Cir. 2010). Consistent with those then-controlling decisions, at oral argument Miles's counsel agreed this was in essence a sentencing issue and argued the district court impermissibly considered itself bound at sentencing by the jury's quantity finding. We reject this contention. In our view, the sentencing transcript demonstrates that the court understood its sentencing authority and simply adopted the jury's drug quantity finding, which was well supported by the trial record.

The Supreme Court in Alleyne overruled its prior decisions on which we had relied and held that any fact which imposes or increases an applicable mandatory minimum sentence "is an element of a distinct and aggravated crime [and] must,

[5]Corredor testified that Miles was always with Dunn, who sold an average of eight kilograms of cocaine per month, and that Miles took the cocaine from and gave money to Corredor four or five times.

-16-

therefore, be submitted to the jury and found beyond a reasonable doubt." 133 S. Ct. at 2163. In this case, the 5-kilogram quantity was submitted to and found by the jury, so no violation of Alleyne occurred. However, because the jury's drug quantity finding is far more significant post-Alleyne, the question whether to submit to the jury a lesser-included-quantity offense, if timely requested, may require a somewhat different analysis post-Alleyne. We need not consider that question because no request was timely made. We conclude the district court committed no plain error in submitting to the jury only the drug quantity alleged in the indictment, in addressing drug quantity in the manner prescribed by our controlling decisions at Miles's sentencing, and in imposing a sentence consistent with the jury's quantity finding and therefore with the Supreme Court's decision in Alleyne.

**C. Dennis Westbrook.** Westbrook argues the district court erred in denying his motion for a new trial because the prosecutor gave an improper and prejudicial rebuttal closing argument. At trial, during Corredor's testimony, the government played five recorded phone calls, and Corredor testified that each was a conversation with Westbrook about money Westbrook owed Corredor for cocaine. During closing argument, Westbrook's counsel argued:

> Everybody has told you about code names and using code in telephone calls. We heard telephone calls where . . . three dollars means kilos, bring me a shoe, that's a kilo. . . . Do you realize out of the thousands of calls there's not one from Dennis Westbrook, not one that asks for a shoe, that asks for . . . three dollars? There's not one coded telephone call in the entire 7000 pages of the government's case.

That argument prompted the following rebuttal argument from the government:

> In this conspiracy from January of '07 to June of '09, the government is on a wiretap for a small period of time. And we recorded thousands of phone calls. And we only played some of them for you here. We could have been here for weeks if we played every single phone call. But we don't need to play every single phone call because we played phone calls that show you what was going on inside of this conspiracy.
>
> Now, we don't have to give you evidence of every single day that these guys . . .
>
> [DEFENSE COUNSEL]: Objection, may we approach?
>
> THE COURT: No, state your objection. Without it being a speaking objection.
>
> [DEFENSE COUNSEL]: Assuming facts not in evidence.
>
> THE COURT: Overruled.
>
> [THE PROSECUTOR]: Thank you, Your Honor. We have to prove our case beyond a reasonable doubt, and that doesn't mean that we have to come in here and play every single . . . recording that we have for you because . . . the evidence that you've heard from us so far proves beyond a reasonable doubt that these five guys are involved with Alejandro Corredor and his drug dealing business.

And then in concluding the prosecutor repeated:

> Again, we played some of these phone calls to give you an idea what's going on. Could we have played a whole lot more? Yeah, we could. We don't want to be here for two or three weeks trying this case. . . .

-18-

Westbrook did not object to the last two above-quoted segments. After the jury's verdict, he moved for a new trial, arguing as he does on appeal that the rebuttal was improper because it essentially asked the jury to believe that the government could have presented a mountain of other incriminating evidence. The district court denied the motion because -

> it is clear that the Government was not attempting to bolster a weak case with references to evidence not presented at trial. The Government had already presented the testimony of Alejandro Corredor, which identified Defendant Westbrook as the speaker in a number of recordings in which he appeared to discuss the drug conspiracy.

We review the district court's control over closing arguments and denial of a motion for new trial for abuse of discretion. See United States v. Barrera, 628 F.3d 1004, 1007 (8th Cir. 2011).

Regarding the rebuttal closing argument, there plainly was no abuse of discretion because the only ruling the court was called upon to make was correct. Both Corredor and Agent King had testified that the government recorded hundreds or thousands of calls during the wiretap of Corredor's phone. Thus, Westbrook's objection that the prosecutor was assuming facts not in evidence was properly overruled. No other contemporaneous objection was made.

Regarding denial of a new trial, we agree with the district court's reasoning. In response to Westbrook's "no coded calls" argument, the government properly responded that it had introduced calls establishing defendants' guilt. The government made no reference to additional *incriminating* evidence. It simply stated the obvious fact that the trial would have been greatly extended had all the recorded calls been played. Given the prosecutor's emphasis on incriminating calls that were in evidence,

the district court did not abuse its discretion by inferring the government "was not attempting to bolster a weak case" with improper references to evidence that was not presented or facts that were not in evidence. When considering a new trial motion based on an ambiguous remark in closing argument, "a court should not lightly infer that a prosecutor intends an ambiguous remark to have its most damaging meaning or that a jury, sitting through lengthy exhortation, will draw that meaning from the plethora of less damaging interpretations." United States v. Gardner, 396 F.3d 987, 992 (8th Cir.) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647 (1974)), cert. denied, 546 U.S. 866 (2005).

**D. Danny Moore.** Moore argues his Sixth Amendment right of confrontation was violated when the district court limited his cross-examination of Agent King at trial. On cross examination, Agent King confirmed that Corredor was arrested by a Kansas sheriff with 85 pounds of cocaine in January 2005 and the U.S. Attorney's Office in the District of Kansas elected not to prosecute. Defense counsel then asked:

> Q: So federal authorities knew that Alejandro Corredor was in this country illegally distributing significant amounts of cocaine as early as January of 2005; is that true?

The government objected. The district court asked how it was relevant to defendants' guilt that the government "didn't arrest Mr. Corredor." Defense counsel responded, "I think it's simply part of the conspiracy. I think it's relevant that the jury know all of the facts and what the government did and didn't do as part of this investigation." The district court ruled "that it's not relevant whether or not they did or did not arrest Alejandro Corredor at some earlier point." When defense counsel replied, "arguably this goes to the credibility of the investigation," the court observed, "it's the credibility of the witnesses that we're concerned about."

-20-

The Sixth Amendment guarantees a defendant an opportunity for effective cross-examination of witnesses, but courts retain wide latitude to impose reasonable limits subject to our review for "a clear abuse of discretion and a showing of prejudice." United States v. Brown, 110 F.3d 605, 611 (8th Cir. 1997) (citation omitted). "A limitation on cross-examination does not violate the Sixth Amendment unless the defendant shows that a reasonable jury might have received a significantly different impression of the witness's credibility had defense counsel been permitted to pursue his proposed line of cross-examination." United States v. Walley, 567 F.3d 354, 358 (8th Cir. 2009) (quotation omitted). Here, we agree with the district court that further questions regarding any decision by the U.S. Attorney's office in another district not to prosecute Corredor in 2005 or 2006 would not have given the jury a "significantly different impression" of any witness's credibility, including Corredor. There was no abuse of discretion.

**E. Vincent Charles.** The issues raised on appeal by Mr. Charles have been addressed in Parts I and II of this opinion.

For the foregoing reasons, the judgments of the district court are affirmed.

_____