# United States Court of Appeals
## For the Eighth Circuit

_____

No. 24-1190
_____

United States of America

*Plaintiff - Appellee*

v.

Jeffery Lee Boyd

*Defendant - Appellant*
_____

Appeal from United States District Court
for the Southern District of Iowa - Central
_____

Submitted: January 13, 2025
Filed: August 13, 2025
_____

Before LOKEN, ARNOLD, and KELLY, Circuit Judges.
_____

LOKEN, Circuit Judge.

Beginning in February 2021, Iowa and Minnesota undercover drug trafficking investigators purchased methamphetamine from two distributors and identified Jeffery Lee Boyd as one of their customers. During a warrant search of Boyd's residence in Albion, Iowa in September, Boyd directed investigators to the location of incriminating evidence -- a loaded Smith & Wesson .380 Bodyguard Pistol and its ammunition in a lock box on the kitchen counter, 2.33 grams of methamphetamine

in the adjacent living room, and a scale with methamphetamine residue in the bedroom. In a February 2022 interview, Boyd admitted purchasing at least four pounds of methamphetamine from one distributor, using some of the drugs himself and selling the rest to his friends. He admitted purchasing the Smith & Wesson firearm. When asked why he bought the gun, Boyd stated, "if the world went to shit, [I] didn't want to be the only one without a gun."

Boyd was charged with conspiracy to distribute 50 grams or more of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A), and 846 and in addition to being a prohibited person in possession of a firearm. He pleaded guilty to the conspiracy count. The offense calls for a mandatory minimum sentence of 120 months imprisonment unless Boyd qualifies for safety-valve relief under 18 U.S.C. § 3553(f) and § 5C1.2 of the advisory sentencing guidelines. In the plea agreement, the parties stipulated "as a recommendation to the District Court that the two-level upward adjustment [for possession of a dangerous weapon] under USSG §2D1.1(b)(1) applies." The government agreed to dismiss the firearm count that charged violations of 18 U.S.C. §§ 922(g)(1), 922(g)(3), and 924(a)(2).

"Safety-valve relief allows the district court to disregard an applicable statutory minimum if certain requirements are met." United States v. Voelz, 66 F.4th 1155, 1159 (8th Cir. 2023) (quotation omitted). To qualify for safety-valve relief, the defendant must prove by a preponderance of the evidence that he meets the five criteria in 18 U.S.C. § 3553(f). See United States v. Morones, 181 F.3d 888, 890 (8th Cir. 1999). One criterion for safety-valve relief is that the defendant must prove that he did not "possess a firearm or other dangerous weapon . . . in connection with the offense." § 3553(f)(2). Section 5C1.2(a)(2) of the Sentencing Guidelines "reflect[s] this statutory provision." Voelz, 66 F.4th at 1159. The Presentence Investigation Report (PSR) calculated Boyd's total offense level at 35, including the two-level enhancement under § 2D1.1(b)(1) and a three-level downward adjustment for acceptance of responsibility under USSG § 3E1.1(a) and (b), resulting in an advisory

-2-

guidelines sentencing range of 188-235 months imprisonment. At sentencing, the district court adopted the PSR's guidelines calculation and granted the government's motion for a 10% downward departure from the guidelines range, resulting in an advisory guidelines range of 169-211 months imprisonment.

The district court overruled Boyd's timely objection to the PSR determination that he is ineligible for safety-valve relief due to his possession of a firearm. The two-level adjustment under § 2D1.1(b)(1) applies "if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense." USSG § 2D1.1, comment. (n.11(A)). Boyd stipulated that he possessed the firearm and the upward adjustment is applicable, "meaning the defendant stipulated that it was not clearly improbable that the firearm he possessed was connected to his drug offense."

Boyd argued that the § 2D1.1(b)(1) enhancement did not foreclose safety-valve relief because the safety-valve standard should be proof by preponderance of the evidence, not the § 2D1.1(b)(1) clearly improbable standard. But the court found that even under the preponderance of the evidence standard, Boyd could not prove that he did not "possess a firearm . . . in connection with" his drug offense:

> Here we have the gun in the same residence where the drugs are routinely stored and processed and where drug proceeds were kept. This isn't a shotgun or a rifle, it's a handgun. The gun's easily accessible in the kitchen of the home. It's the room directly adjacent to where the methamphetamine was located.
>
> Defendant offers no real explanation for why he has the gun . . . . He's not claiming to be . . . a hunter, he's not claiming that he enjoys target shooting, he's not claiming that he inherited this gun from a relative or that it's an antique of some kind. He went and bought it illegally for $200.

After careful consideration of the 18 U.S.C. § 3553(a) factors, including Boyd's age (68), long struggle with drug and alcohol addiction, lack of evidence "he ever really used the gun," and the court's policy disagreement with harsh drug guidelines, the district court varied downward and sentenced Boyd to the mandatory minimum 120 months imprisonment.

Boyd appeals the denial of safety-valve relief. We review the district court's interpretation of 18 U.S.C. § 3553(f) and USSG § 5C1.2 *de novo* and its factual findings regarding safety-valve eligibility for clear error. See Voelz, 66 F.4th at 1159 (quotation omitted). We affirm.

On appeal, Boyd argues the district court erred in ruling that his plea agreement stipulation "automatically" precludes safety valve relief because "[d]ifferent standards apply to determine whether an enhancement applies under [§ 2D1.1(b)(1)] and whether a defendant is eligible for safety valve." Under Voelz and earlier cases, he argues, "the clearly-improbable standard has slipped into safety-valve jurisprudence with no actual analysis of the governing statutory language." Boyd cites to cases from other circuits acknowledging that because these standards are different, "not all defendants who receive the [firearm] enhancement . . . are precluded from relief." United States v. Carrasquillo, 4 F.4th 1265, 1272 (11th Cir. 2021).

This contention might make for a challenging law school exam question, but it ignores a critical part of the record on appeal -- the district court did not simply hold that Boyd's plea agreement stipulation automatically precludes safety valve relief. It analyzed the sentencing record and *found* that Boyd could not prove by a preponderance of the evidence that he did not "possess a firearm . . . in connection with" his drug offense. The court summarized affirmative evidence in the record supporting that finding -- Boyd possessed the gun "in the same residence where the drugs are routinely stored and processed and where drug proceeds were kept." The

handgun was "easily accessible in the kitchen of the home. It's the room directly adjacent to where the methamphetamine was located."

Like many circuits, we have held "that constructive possession is sufficient to preclude application of safety valve relief." United States v. Jackson, 552 F.3d 908, 909 (8th Cir. 2009) (citations omitted). Here, as in United States v. Dunn, "the district court did not clearly err in finding that [Boyd] exercised ownership, dominion, or control over the premises where the [gun was] found, and that the weapon was found in the same location where drugs or drug paraphernalia were stored, or where part of the conspiracy took place." 723 F.3d 919, 930 (8th Cir. 2013) (quotation omitted), cert. denied, 571 U.S. 1145 (2014). "A defendant possesses a firearm in connection with an offense if the evidence shows that the weapon facilitated or had [the] potential to facilitate the drug offense. . . . The presence of a firearm in a location where it could be used to protect drugs can be sufficient evidence to prove the requisite connection." United States v. Warford, 439 F.3d 836, 844 (8th Cir. 2006) (quotations omitted).

The district court did not clearly err in finding that Boyd was ineligible for safety valve relief under 18 U.S.C. § 3553(f)(2) and USSG § 5C1.2(a)(2) because he could not prove by a preponderance of the evidence that he did not possess a firearm or other dangerous weapon in connection with the drug offense. As the court noted, Boyd bears the burden of proving it is more likely than not that the Smith & Wesson found on the kitchen table was not possessed in connection with the drug offense. The court further explained:

> [Boyd] offers no real explanation for why he has the gun, other than he's worried about the world going, you know, wrong and that he wants to have a gun if it does. He's not claiming to be . . . a hunter, he's not claiming that he enjoys target shooting, he's not claiming that he inherited this gun from a relative or that it's an antique of some kind. He went and bought it illegally for $200.

Consistent with the district court's analysis, our panel in <u>Voelz</u> also found that "sufficient evidence supports the conclusion that Voelz possessed the weapons in connection with the offense." 66 F.4th at 1161. The firearms "were all near drugs or drug paraphernalia. . . . At a minimum, Voelz constructively possessed some of these weapons in connection with the drug offense." <u>Id</u>. <u>Voelz</u> is binding on our panel. Moreover, in <u>Carrasquillo</u>, on which Boyd heavily relies, the Eleventh Circuit also affirmed the denial of safety-valve relief because the district court's findings under § 2D1.1(b)(1) established a connection between the firearm and the drug offense that foreclosed safety-valve relief under § 5C1.2(a). The court noted:

> As we have remarked, the number of defendants who are subject to the § 2D1.1(b)(1) enhancement and who can also satisfy § 5C1.2(a)(2) will undoubtedly be rare. Given the district court's § 2D1.1(b)(1) factual findings, Mr. Carrasquillo does not fall into that narrow category of defendants.

4 F.4th at 1274 (citation and quotation omitted). It is noteworthy that Boyd does not cite *a single case* where a defendant fell into the "narrow category" that the Eleventh Circuit has said *may* exist because of the different evidentiary standards and placement of the burden of proof under §§ 2D1.1(b)(1) and 5C1.2(a)(2).

For the foregoing reasons, the judgment of the district court is affirmed.

_____